1
 2024 CO 65 In Re The People of the State of Colorado, Plaintiff v. Ashton Michael Whittington. Defendant No. 24SA150
Supreme Court of Colorado, En banc
September 30, 2024
 
          
 Original Proceeding Pursuant to C.A.R. 21 Ouray County Court
 Case No. 23CR26 Honorable Sean Kendall Murphy, Judge
 
 
          
 Attorneys for Plaintiff: Seth Ryan, District Attorney,
 Seventh Judicial District Ryan L. Hess, Deputy District
 Attorney Montrose, Colorado
 
 
          
 Attorneys for Defendant: Megan A. Ring, Public Defender
 Patrick Crane, Deputy Public Defender Cody Seboldt, Deputy
 Public Defender Montrose, Colorado
 
 
          
 Attorneys for Respondent Ouray County Court: Philip J.
 Weiser, Attorney General M. Blake McCracken, Assistant
 Attorney General
 
 2
 
           Joseph
 A. Peters, Senior Assistant Attorney General Denver, Colorado
 
 
          
 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 SAMOUR, and JUSTICE BERKENKOTTER joined.
 
 3
 
          Rule
 Made Absolute
 
 
          
 OPINION
 
 
           HART
 JUSTICE
 
 
          ¶1
 In this original proceeding, we consider whether the Ouray
 County Court abused its discretion by partially granting
 Ashton Michael Whittington's motion for sanctions against
 the Seventh Judicial District Attorney's Office based on
 violations of Crim. P. 16(I)(b)(1), both in Whittington's
 prosecution and as an alleged pattern in other cases. We
 conclude that the court abused its discretion when it
 excluded evidence as a sanction during the preliminary
 hearing without making any of the requisite findings to
 justify imposing that sanction. Based on our conclusion, we
 need not decide whether the county court had jurisdiction to
 impose the sanction. Accordingly, we reverse the county
 court's order imposing sanctions and remand for further
 proceedings.
 
 
          I.
 Facts and Procedural History
 
 
          ¶2
 The People allege that Whittington gave alcohol to a minor
 and was complicit in her sexual assault on May 14, 2023.
 Whittington first appeared in Ouray County Court on December
 22, 2023, and the People filed formal charges against him on
 December 27, 2023.
 
 
          ¶3
 Under Crim. P. 16(I)(b)(1), the People had to disclose
 certain types of evidence in their actual or constructive
 possession to defense counsel within twenty-one days of first
 filing charges against Whittington (here, by January 17,
 2024). The People provided a first set of disclosures on
 December 27, 2023. The
 
 4
 
 People did not provide any additional disclosures within the
 required twenty-one-day window.
 
 
          ¶4
 After that window closed, the People provided four additional
 sets of disclosures during February and March 2024. While
 some of these subsequent disclosures contained information
 that was not in the People's possession when they charged
 Whittington, some of that evidence had been in their
 possession before January 17. Some of the materials
 disclosed, including in the first set of disclosures,
 included broken links; defense counsel and the prosecution
 had a lot of back-and-forth communication about correcting
 these errors.
 
 
          ¶5
 Whittington's preliminary hearing was originally set for
 March 6, 2024, but it was continued to the afternoon of March
 13, 2024, at the request of the People. That morning, the
 People provided their fifth set of disclosures. Based on the
 People's failure to comply with Rule 16's mandatory
 disclosure timeline, Whittington filed a motion to dismiss
 the case or to impose other sanctions. The motion noted that
 some evidence in his case had still not been disclosed, and
 it also pointed to an alleged pattern of Rule 16 violations
 within the Seventh Judicial District Attorney's Office.
 
 
          ¶6
 At the hearing, Whittington requested dismissal of the
 charges against him as a punitive sanction against the
 People. The People argued that the county court's limited
 jurisdiction to hold a preliminary hearing on a felony charge
 did
 
 5
 
 not allow it to dismiss the case. The People instead
 suggested that the court had jurisdiction to impose other
 sanctions, such as ordering a continuance of the preliminary
 hearing to cure the late production by permitting review of
 the evidence and perhaps excluding late-produced evidence
 from consideration at that hearing.
 
 
          ¶7
 The court considered ordering a continuance so the defense
 would have an opportunity to review the evidence. Both
 parties agreed that the preliminary hearing would not be
 completed that day because it had started in the afternoon,
 the discovery dispute took a lot of time, and defense counsel
 anticipated needing multiple hours to cross-examine witnesses
 during the hearing.
 
 
          ¶8
 Whittington argued, however, that a continuance would be an
 inappropriate sanction because he had a right to a prompt
 decision as to whether the People had probable cause to
 charge him, particularly on the complicity charge.
 Whittington also argued that the exclusion of evidence would
 be an insufficient sanction, suggesting that the late and
 still undisclosed evidence may have been deliberately
 withheld because it was exculpatory or otherwise mitigating.
 Finally, he argued that neither a continuance nor exclusion
 would be sufficient to address his allegation that the delay
 in his case was part of a pattern of delay by the Seventh
 Judicial District Attorney's Office.
 
 6
 
          ¶9
 Ultimately, the court reasoned that it lacked sufficient
 evidence to conclude that the People's untimely
 disclosures in this case were part of a larger pattern of
 violations across the district. The court also rejected
 Whittington's claim that the late and missing disclosures
 in this case specifically were the result of any bad intent.
 The court noted that the prosecutor had offered explanations
 for each of the missing and late disclosures and that it was
 not willing to infer an intent to deceive when there was
 "an officer of the court [] here before me and telling
 me that there's a plausible, reasonable
 explanation."
 
 
          ¶10
 Despite these findings, the court ordered the exclusion of
 all evidence from the preliminary hearing that had been in
 the People's actual or constructive possession and that
 had been disclosed after January 17, 2024. The court did not,
 however, make a record as to why the exclusion of evidence
 from the preliminary hearing was an appropriate curative
 sanction or why a continuance would be insufficient.
 
 
          ¶11
 Following the court's order, the parties began the
 preliminary hearing but only one witness was called for
 direct examination by the prosecutor before the court
 continued the hearing to March 29, 2024. The court entered a
 written order memorializing its exclusion of any
 late-disclosed evidence, again without findings to support
 the exclusion beyond a statement that "[t]he People have
 failed to comply with Rule 16 with respect to certain
 evidence." It did not include any
 
 7
 
 findings about the reasons for the delayed disclosures, the
 prejudice the delay had caused, or the availability of less
 severe sanctions to cure any prejudice.
 
 
          ¶12
 The People appealed the county court's sanction order to
 the district court under Crim. P. 37.1, which permits the
 prosecution to file an interlocutory appeal from county to
 district court when the court grants a motion to suppress
 evidence. The district court dismissed the appeal, asserting
 that it lacked jurisdiction because "the matter [should
 be] taken up as an original proceeding pursuant to C.A.R.
 21." People v. Whittington, No. 24CV30006, at 3
 (Dist. Ct., Ouray Cnty., (May 3, 2024)).
 
 
          ¶13
 The People then petitioned this court pursuant to C.A.R. 21,
 and we granted the petition.[1]
 
 
          II.
 Analysis
 
 
          ¶14
 We begin by addressing our original jurisdiction to hear this
 matter. Then, we detail the relevant standard of review and
 the requirements of Crim. P. 16. Assuming without deciding
 that county courts have jurisdiction to exclude evidence in a
 preliminary hearing as a sanction for discovery violations,
 we hold
 
 8
 
 that the county court abused its discretion by imposing
 sanctions that exceeded what was reasonably appropriate to
 ensure compliance with the discovery rules, without first
 finding either willful misconduct or a pattern of discovery
 violations by the sanctioned party.
 
 
          A.
 Jurisdiction
 
 
          ¶15
 Whether we exercise jurisdiction pursuant to C.A.R. 21 is a
 matter wholly within our discretion. People v.
 Hernandez, 2021 CO 45, ¶ 13, 488 P.3d 1055, 1060.
 We have previously exercised this jurisdiction when a trial
 court has abused its discretion and the remedy on appeal
 would be inadequate. Hoffman v. Brookfield Republic,
 Inc., 87 P.3d 858, 861 (Colo. 2004). We do not hesitate
 "to take jurisdiction when a pretrial interlocutory
 ruling significantly interfere[s] with a party's ability
 to litigate the merits of the case." People v. Dist.
 Ct., 793 P.2d 163, 166 (Colo. 1990); see also People
 v. Lee, 18 P.3d 192, 196 (Colo. 2001).
 
 
          ¶16
 We agree with the district court that this matter is
 appropriate for review under C.A.R. 21. If the exclusion of
 this evidence is not appropriate, the People will be
 significantly disadvantaged in proving probable cause at the
 preliminary hearing, and there is no appellate remedy that
 can address that disadvantage. Accordingly, we exercise our
 jurisdiction under C.A.R. 21.
 
 9
 
          B.
 Standard of Review and Legal Framework
 
 
          ¶17
 Choosing an appropriate sanction to address discovery
 violations lies within the sound discretion of the trial
 court, and we will not disturb its decision absent an abuse
 of that discretion. People v. Daley, 97 P.3d 295,
 298 (Colo.App. 2004). This standard defers to a trial
 judge's decision on account of "the multiplicity of
 considerations involved and the uniqueness of each
 case." Lee, 18 P.3d at 196. A court's
 discretion to impose discovery sanctions is not unlimited,
 however. Id. When a court imposes discovery
 sanctions, it must exercise its discretion "with due
 regard for the purposes of the discovery rules themselves and
 the manner in which those purposes can be furthered by
 discovery sanctions." Id. Moreover, in previous
 cases,
 
 
 [w]e have laid out several factors that a court must
 consider when fashioning discovery sanctions: "(1) the
 reason for and degree of culpability associated with the
 violation; (2) the extent of resulting prejudice to the other
 party; (3) any events after the violation that mitigate such
 prejudice; (4) reasonable and less drastic alternatives to
 exclusion; and (5) any other relevant facts."
 
 
 People v. Tippet, 2023 CO 61, ¶ 37, 539 P.3d
 547, 555 (emphasis added) (quoting People v. Cobb,
 962 P.2d 944, 949 (Colo. 1998)); see also People v.
 Dunlap, 975 P.2d 723, 755 (Colo. 1999); People v.
 Castro, 854 P.2d 1262, 1265 (Colo. 1993).
 
 
          ¶18
 The Colorado Rules of Criminal Procedure require prosecuting
 attorneys to disclose certain discoverable evidence in their
 possession "as soon as practicable,"
 
 10
 
 but not later than twenty-one days following the
 defendant's first appearance at the time of or following
 the filing of charges. Crim. P. 16(I)(b)(1). Because this
 rule is self-executing, it does not require the defense
 attorney to request the information. Tippet, ¶
 33, 539 P.3d at 554. If a prosecuting attorney fails to
 comply with this rule, a court may order sanctions that it
 deems "just under the circumstances." Crim. P.
 16(III)(g).
 
 
          ¶19
 Importantly, though, the core purpose of the discovery
 process mandated by Crim. P. 16 is to "advance the
 search for truth." Dist. Ct., 793 P.2d at 168.
 For this reason, sanctions under Crim. P. 16 must generally
 be aimed toward "protecting the integrity of the
 truth-finding process and deterring discovery-related
 misconduct." Lee, 18 P.3d at 196. These
 sanctions may therefore either be curative or, when there is
 "willful misconduct or a pattern of neglect
 demonstrating a need for modification of a party's
 discovery practices," be deterrent or punitive.
 Id. at 196-97.
 
 
          ¶20
 Regardless of the type of sanctions imposed "the trial
 court must strike a balance by 'impos[ing] the least
 severe sanction that will ensure that there is full
 compliance with the court's discovery orders.'"
 Tippet, ¶33, 539 P.3d at 555 (alteration in
 original) (quoting Dist. Ct., 793 P.2d at 168). And
 we have recently emphasized that a court should generally
 avoid excluding evidence as a sanction because exclusion is a
 drastic remedy that may affect the outcome of the trial,
 
 11
 
 provide a windfall to the party against whom the evidence
 would have been offered, or otherwise hinder the search for
 the truth. Id. at ¶ 67, 539 P.3d at 560.
 
 
          C. The
 County Court Abused Its Discretion by Excluding Evidence as a
 Sanction Without Making the Necessary Findings
 
 
          ¶21
 In the present case, the People admit that they untimely
 provided certain evidence to Whittington in violation of
 Crim. P. 16. They explained to the county court, and the
 court accepted, that the delay was not intentional, and that
 the prosecutor was working with Whittington's counsel to
 produce discovery as it became available. In briefing before
 this court, the county court asserts that the exclusion of
 all late-disclosed evidence was merely a curative sanction.
 But the court neither explains nor points to any findings to
 support why this sanction was still needed after the
 continuance of the preliminary hearing gave the defense
 additional time to review the late-disclosed evidence. The
 People, moreover, argue that the exclusion was a deterrent
 sanction that was unsupported by either a finding of willful
 misconduct or of a pattern of noncompliance.
 
 
          ¶22
 In general, the exclusion of evidence is considered a severe
 sanction, imposed as punitive or deterrent rather than
 curative. See, e.g., Lee, 18 P.3d at
 196-97. This is because such a sanction may tend to cut
 against the primary purpose of the discovery rules-to reveal
 the truth. For this reason, we require the court to make
 findings in support of this kind of discovery sanction. The
 court
 
 12
 
 here made no such findings. To the contrary, the court
 specifically found no willful misconduct in this case and no
 basis for concluding that the People exhibited a pattern of
 discovery violations.
 
 
          ¶23
 The court only found that the People had violated Crim. P.
 16. That is undisputed. But the imposition of a serious
 discovery sanction requires more. A review of our prior
 discovery sanction cases is instructive to underscore the
 point. We have upheld severe trial court discovery sanctions
 when the prosecution refused to comply with a specific court
 order. See, e.g., Tippet, ¶ 1, 6, 539
 P.3d at 550-51 (concluding that there was no abuse of
 discretion in reducing the defendant's charges where,
 among other things, the prosecution had violated a court
 order requiring production of discovery); People v.
 Thurman, 787 P.2d 646, 655 (Colo. 1990) (concluding that
 there was no abuse of discretion in dismissing the charges in
 response to the prosecution's willful refusal to comply
 with a court order). But when there was no evidence that the
 prosecution had violated a court order or engaged in
 intentional misconduct, we have reversed a trial court's
 exclusion of evidence. Lee, 18 P.3d at 198. Under
 the circumstances presented here, and particularly in the
 absence of findings explaining the sanction, we cannot
 conclude that the exclusion of all late-disclosed evidence
 from the preliminary hearing was within the county
 court's discretion.
 
 13
 
          ¶24
 We need not decide whether the county court had jurisdiction
 to impose sanctions under Crim. P. 16 because the court did
 not make any findings to support a sanction as severe as the
 one it imposed here. Instead, assuming without deciding that
 jurisdiction was proper, we hold that the county court's
 exclusion of all late-discovered evidence from the
 preliminary hearing was an abuse of discretion.
 
 
          III.
 Conclusion
 
 
          ¶25
 The county court did not make the necessary findings to
 impose the severe discovery sanction it imposed here.
 Accordingly, we make the rule to show cause absolute, reverse
 the order imposing sanctions, and remand the case for further
 proceedings consistent with this opinion.
 
 14
 
          
 JUSTICE GABRIEL, joined by JUSTICE HOOD, dissenting.
 
 
          ¶26
 The majority concludes that because the Ouray County Court
 did not make sufficient findings to justify the
 "severe" sanction of the exclusion of certain
 limited evidence from a preliminary hearing, the court abused
 its discretion when it excluded that evidence as a sanction
 for substantial discovery violations that the People
 conceded. Maj. op. ¶¶ 1, 24-25.
 
 
          ¶27
 Because (1) the People invited the alleged error about which
 they now complain and, in any event, did not preserve their
 argument that the county court lacked the authority to impose
 the sanction that it did; (2) the People conceded their
 discovery violations, and the court crafted a narrow sanction
 to address those violations; and (3) the People confirmed
 that they did not intend to rely on the evidence that the
 court excluded, thereby belying any assertion that the
 sanction here was "severe" or that the People will
 be "significantly disadvantaged in proving probable
 cause at the preliminary hearing," id. at
 ¶¶ 16, 24-25, I perceive no abuse of discretion by
 the county court. Accordingly, I would discharge our rule to
 show cause.
 
 
          ¶28
 I therefore respectfully dissent.
 
 
          I.
 Facts and Procedural History
 
 
          ¶29
 The facts pertinent to my analysis are undisputed.
 
 15
 
          ¶30
 On December 27, 2023, Ashton Michael Whittington was charged
 with (1) a class 2 misdemeanor for serving alcohol to a
 person under the age of twenty-one; (2) a class 4 felony for
 contributing to the delinquency of a minor; and (3) a class 3
 felony sexual assault. These charges arose out of a
 minor's allegations that on May 14, 2023, Whittington had
 provided her with alcohol at a house party where she was
 later sexually assaulted by two of Whittington's friends
 while he observed. (Whittington's friends are facing
 charges in separate cases.) The county court set a
 preliminary hearing for March 6, 2024.
 
 
          ¶31
 Crim. P. 16(I)(a) and Crim. P. 16(I)(b)(1) require, in
 pertinent part, that the people provide certain discovery
 materials to a defendant no later than twenty-one days after
 the defendant's first appearance at the time of or
 following the filing of charges. Whittington made his first
 appearance on December 22, 2023, and in accordance with the
 foregoing rules, the People began producing discovery packets
 to Whittington.
 
 
          ¶32
 The People and Whittington appear to disagree as to when the
 People provided their first discovery packet. The parties
 agree, however, that, during a phone call in early February
 2024, Whittington requested, among other things, a Snapchat
 video recovered from his phone that the People had claimed
 supported the charges in this case. The People ultimately
 produced that video to Whittington in late February. Around
 that same time, Whittington contacted the People to
 
 16
 
 request body-worn camera videos of law enforcement's
 search of the alleged crime scene.
 
 
          ¶33
 Shortly thereafter, at the People's request, the court
 postponed the preliminary hearing until March 13, 2024.
 
 
          ¶34
 In the two days before the rescheduled hearing, Whittington
 again contacted the People to request the body-worn camera
 videos of the search of the alleged crime scene. He also
 asked for the data extracted by law enforcement from the
 suspects' and the alleged victim's cell phones.
 
 
          ¶35
 In the meantime, on three separate occasions in March, the
 People turned over additional discovery packets, one of which
 they produced the morning of March 13, the date of the
 continued preliminary hearing. That discovery packet
 contained eleven videos, including the videos of the crime
 scene search that Whittington had requested multiple times
 and a video of an interview with one of Whittington's
 co-defendants. These videos were created between May 14, 2023
 and August 7, 2023. That same morning, an evidence.com link
 became available to Whittington, and this link included seven
 additional videos from the Colorado Bureau of Investigation
 ("CBI") spanning the time frame July to September
 2023.
 
 
          ¶36
 Immediately after receiving these untimely disclosures and
 approximately ninety minutes before the beginning of the
 previously continued preliminary hearing, Whittington filed a
 motion to dismiss the case or to impose sanctions
 
 17
 
 pursuant to Crim. P. 16(III)(g), which authorizes courts to
 impose sanctions for violations of Crim. P. 16(I). In support
 of this motion, Whittington cited our decision in People
 v. Tippet, 2023 CO 61, ¶¶ 64-70, 539 P.3d 547,
 559-60, in which we had concluded that a district court did
 not abuse its discretion when it reduced a first degree
 murder charge to second degree murder as a sanction for a
 district attorney's office's two-year pattern and
 practice of neglect of its discovery obligations.
 Specifically, Whittington argued that dismissal was
 appropriate because (1) the People should have disclosed all
 of the discovery by January 13, 2024, based on
 Whittington's first appearance in court, or, at the
 latest, by January 17, 2024, based on Whittington's
 counsel's entry of appearance; (2) much of the discovery
 material disclosed to him had been turned over after those
 dates, and the phone extractions taken of the suspects and
 the alleged victim still had not been produced; and (3) the
 record established a pattern of at least neglectful discovery
 behavior by this district attorney's office, as evidenced
 by the findings of thirty-seven prior violations of Crim. P.
 16 by that office in other cases, which findings Whittington
 listed in his motion.
 
 
          ¶37
 The court addressed Whittington's motion toward the
 beginning of the preliminary hearing. There, Whittington
 repeated his request that the court dismiss the case and
 proposed, in the alternative, that the court dismiss at least
 the
 
 18
 
 class 3 felony charge (the highest degree crime with which
 Whittington had been charged).
 
 
          ¶38
 For their part, the People argued that the county court did
 not have the authority to dismiss this case because the
 concurrent jurisdiction that county courts have relative to
 district courts concerns only dispositional hearings. Thus,
 in the People's view, the court was "limited to a
 bound over order." The People recognized, however,
 "There could be sanctions, exclude the evidence,
 those type of things I believe THE COURT can do for
 prelim [sic] purposes." (Emphasis added.)
 
 
          ¶39
 Turning then to the merits of Whittington's motion, the
 People explained that (1) this case is "pretty
 massive" and involves "a lot of information";
 (2) they had experienced delays and technical issues in
 obtaining discovery from the CBI; (3) the People had not
 obtained the Snapchat video that Whittington had requested
 until late February; and (4) other discovery that Whittington
 claimed had been disclosed late had been previously turned
 over "in some form or another."
 
 
          ¶40
 Following the People's explanation, the court sought to
 clarify whether it was the People's position that nothing
 had been provided late. The People responded, "No. I
 agree that there are some things that are late." Then,
 in response to further inquiry from the court, the People
 acknowledged that the body-worn camera videos of the search
 warrant execution and the phone
 
 19
 
 extractions were late. The People further noted that certain
 files had been produced in a form that could not be accessed.
 The People remarked, however, that both dismissal of the case
 and exclusion of evidence were "extreme
 consequences." They also noted that because
 Whittington's motion had been submitted that morning,
 they were not prepared to speak to the other thirty-seven
 violations alleged in that motion.
 
 
          ¶41
 Whittington questioned the People's explanation and
 insisted that dismissal was not an extreme remedy, especially
 if the court dismissed only the class 3 felony charge, which,
 he explained, was based on a complicity theory that also
 supported the class 4 felony charge. The People then repeated
 that the court did not have the authority to dismiss the case
 but stated:
 
 
 What I believe this court can do is this court can
 exclude certain evidence that [the] People can use during a
 preliminary hearing. I believe that this court could
 issue a, basically you can't put on evidence[,]
 People . . . . I think THE COURT could
 potentially craft something to do that.
 
 
 (Emphases added.)
 
 
          ¶42
 After considering the parties' arguments, the court
 issued a narrow exclusion order, finding that because the
 charges were filed on December 27, 2023 and twenty-one days
 after that date would have been January 17, 2024,
 "anything that was within the . . . constructive custody
 of the People that was not provided by January 17th, 2024 is
 not eligible for admission for today's preliminary
 hearing."
 
 20
 
          ¶43
 Whittington expressed concern about this ruling, noting that
 merely precluding the People from using such information
 without further sanction would afford him an insufficient
 remedy for what he perceived to be, at best, a pattern of
 negligence. Whittington further noted that the court's
 ruling was potentially prejudicial to him because it could
 have the effect of precluding the introduction of exculpatory
 evidence that the People may have withheld or untimely
 disclosed.
 
 
          ¶44
 The court, however, stood by its previous ruling and ordered
 the People to provide the pending disclosure materials by the
 following Friday. In so ruling, the court stated, "I
 don't see going any further or, or dismissing charges
 just based on-I have to draw inferences about intent to
 deceive." The court continued, "I understand that
 your [i.e., defense counsel's] argument that there's
 some sort of pattern and it may be malicious, but I just
 don't have the basis to draw that conclusion and
 therefore infer anything beyond setting up those guardrails
 then."
 
 
          ¶45
 The People then sought to clarify whether the transcripts of
 the crime scene search, as opposed to the body-worn camera
 videos of that search, were also excluded, even though the
 transcripts had been timely disclosed. Notably, during the
 ensuing colloquy, the People stated, "I think to
 clarify, I don't have an intent to use anything-Anything
 that we've disclosed late, I haven't had the
 intention
 
 21
 
 of using . . . in this case for this preliminary
 hearing." The court ultimately allowed the transcripts
 in question to come into evidence.
 
 
          ¶46
 Shortly after that exchange, the People began and, just
 before 5:00 p.m., completed the victim's direct
 examination. Because of the time, the court continued the
 hearing to March 29, before Whittington's counsel began
 his cross-examination of the victim.
 
 
          ¶47
 Before the preliminary hearing recommenced, however, the
 People filed in the district court an interlocutory appeal of
 the county court's sanctions ruling. The district court
 subsequently dismissed that appeal for lack of jurisdiction,
 and the People then sought relief from this court pursuant to
 C.A.R. 21. We issued a rule to show cause.
 
 
          II.
 Analysis
 
 
          ¶48
 I begin by addressing the People's contention that the
 county court lacked the authority to order the exclusion of
 evidence in a preliminary hearing, and I conclude that the
 People invited the alleged error about which they now
 complain and, in any event, did not preserve this contention.
 I then turn to the merits of this case and explain why I
 believe that the court here did not abuse its discretion
 when, as a sanction for admitted discovery violations, it
 excluded from the preliminary hearing certain evidence that
 the People had failed to disclose on a timely basis.
 
 22
 
          A.
 Authority to Exclude Evidence
 
 
          ¶49
 The majority states that, in light of its ultimate conclusion
 in this case, it need not decide whether the county court had
 the authority to impose sanctions on the People for their
 Crim. P. 16 disclosure violations. Maj. op. ¶¶ 1,
 24. I understand and respect the majority's judicial
 restraint in this regard, but I feel compelled to note that I
 need not even get to such an assumption because, in my view,
 the People invited the alleged error about which they now
 complain and, in any event, they did not preserve the issue.
 
 
          ¶50
 Under the invited error doctrine "a party may not
 complain on appeal of an error that he has invited or
 injected into the case; he must abide by [sic] the
 consequences of his acts." Horton v. Suthers,
 43 P.3d 611, 618 (Colo. 2002) (quoting People v.
 Zapata, 779 P.2d 1307, 1309 (Colo. 1989)).
 
 
          ¶51
 Here, as noted above, in their effort to persuade the court
 that it did not have the authority to dismiss the case, the
 People told the court, at least twice, that the court could
 order the exclusion of certain evidence from the preliminary
 hearing as a sanction for the People's discovery
 violations. Having done so, the People may not now challenge
 the court's decision to do precisely what they invited
 the court to do.
 
 
          ¶52
 Even had the People not invited what they now claim was
 error, they did not challenge in the county court that
 court's ruling excluding the evidence, and
 
 23
 
 therefore, they failed to preserve this argument for our
 review. See People v. Salazar, 964 P.2d 502, 507
 (Colo. 1998) ("It is axiomatic that issues not raised in
 or decided by a lower court will not be addressed for the
 first time on appeal.").
 
 
          ¶53
 For these reasons, I would conclude that the People are
 barred from challenging the county court's authority to
 exclude from the preliminary hearing the evidence disclosed
 in violation of Crim. P. 16(I)(b)(1)'s deadline, and I
 therefore turn to the merits of the issue before us.
 
 
          B. No
 Abuse of Discretion
 
 
          ¶54
 A court abuses its discretion when it imposes discovery
 sanctions that are manifestly arbitrary, unreasonable, or
 unfair. Tippet, ¶ 35, 539 P.3d at 554. This is
 obviously a high bar, and for several reasons, unlike the
 majority, I perceive no abuse of discretion in this case.
 
 
          ¶55
 First, the People conceded that they had violated Crim. P.
 16(I)(b)(1)'s requirements in a number of respects.
 Specifically, the People acknowledged at the preliminary
 hearing that the footage of the execution of the search
 warrant and the extracted cell phone data were produced late
 (in fact, the extracted cell phone data had not yet been
 turned over to Whittington). Accordingly, consideration of a
 sanction was proper, lest the court allow a wrong to go
 unremedied. Crim. P. 16(III)(g); see also Tippet,
 ¶ 34, 539 P.3d at 554 ("Choosing an appropriate
 
 24
 
 sanction for discovery violations lies within the sound
 discretion of the trial court and will not be overturned
 absent an abuse of discretion.").
 
 
          ¶56
 Second, unlike the majority, I believe that the court made
 sufficient findings to justify its discovery sanction.
 Indeed, no party disputes that the People violated their
 discovery obligations in significant ways, and the court so
 found. In my view, the finding of undisputed discovery
 violations justified the county court in crafting an
 appropriate sanction.
 
 
          ¶57
 Third, the court imposed an appropriately narrow sanction. As
 noted above, the court excluded only the material that, prior
 to January 17, 2024, had been in the People's
 constructive possession and that they had failed to disclose
 by the applicable deadline. The People may therefore
 presumably use any material disclosed before January 17, 2024
 and any material disclosed to Whittington after that date but
 that had not been in their constructive possession by that
 time. Moreover, the exclusion applied only to the preliminary
 hearing; the order did not address the People's ability
 to present the excluded evidence at trial. I am hard-pressed
 to see how one could characterize such a carefully crafted
 and thoughtful remedy as manifestly arbitrary, unreasonable,
 or unfair. Tippet, ¶ 35, 539 P.3d at 554.
 
 
          ¶58
 Finally, by their own admission, the People suffered no
 prejudice from the court's sanctions order. Specifically,
 as noted above, the People conceded that they
 
 25
 
 did not intend to use the excluded material at the
 preliminary hearing. Accordingly, they have not shown, nor
 could they show, how the court's ruling prejudiced them
 in any way. Nor have they shown any windfall to Whittington
 that would have tended to defeat, rather than further, the
 objectives of discovery, which would have militated against
 the court's sanctions ruling. See People v. Lee,
 18 P.3d 192, 197 (Colo. 2001).
 
 
          ¶59
 In reaching this conclusion, I am unpersuaded by the
 majority's determinations that further findings were
 necessary to support what the majority deemed a
 "severe" sanction and that the People would be
 "significantly disadvantaged in proving probable cause
 at the preliminary hearing." Maj. op. ¶¶ 16,
 24-25. Given the People's concession that they had no
 intention to introduce at the preliminary hearing the
 evidence that the court excluded, I do not agree that the
 sanction that the court imposed was "severe" or
 that the People would in any way be disadvantaged at the
 preliminary hearing.
 
 
          ¶60
 Nor am I persuaded by the People's assertion that our
 decision in Tippet precluded the county court from
 excluding the evidence at issue from the preliminary hearing,
 absent a finding of a pattern of willful or negligent
 misconduct.
 
 
          ¶61
 In Tippet, ¶¶ 1, 42-70, 539 P.3d at 550,
 556-60, we concluded that a trial court did not abuse its
 discretion in reducing a first degree murder charge to second
 
 26
 
 degree murder when the People (1) had failed to produce most
 of the discovery at issue on a timely basis; (2) repeatedly
 failed to comply with court orders to produce all Crim. P. 16
 discovery by certain dates; and (3) displayed similar conduct
 on at least twenty prior occasions. On these facts, we
 concluded that reduction of the first degree murder charge
 was an appropriate sanction because the trial court had found
 a pattern of negligent or willful misconduct and prior
 sanctions had failed. Id. at ¶¶ 41-70, 539
 P.3d at 555-60.
 
 
          ¶62
 Notwithstanding the People's assertion to the contrary, I
 do not read Tippet to preclude the exclusion of
 evidence as a discovery sanction absent a finding of a
 pattern of willful or negligent misconduct. In
 Tippet, ¶ 36, 539 P.3d at 555, we observed that
 "without 'willful misconduct or a pattern of neglect
 demonstrating a need for modification of a party's
 discovery practices, the rationale for a deterrent sanction
 loses much of its force.'" (Quoting Lee, 18
 P.3d at 196.) We did not say, however, that a deterrent
 sanction could never be imposed absent a pattern of
 willful or negligent misconduct. To the contrary, we went on
 to say that the exclusion or complete dismissal of charges
 can be a proper remedy to ensure compliance with
 discovery orders. Id. at ¶ 39, 539 P.3d at 555.
 
 
          ¶63
 Here, the record established substantial discovery
 violations, which the people, in fact, conceded. In these
 circumstances, I believe that our trial courts must be
 empowered to act within their discretion to ensure that
 parties comply
 
 27
 
 with discovery rules and orders. Absent such authority,
 parties could violate all manner of discovery rules without
 material consequence, as long as they can marshal a credible
 argument that their conduct was merely negligent and not
 willful. Such a rule, however, would be directly contrary
 both to Crim. P. 16(III)(g) and to the settled purposes of
 Crim. P. 16, which are to protect the integrity of the
 truth-seeking process while deterring discovery-related
 misconduct. Id. at ¶ 36, 539 P.3d at 555. I
 therefore would not withhold from our trial courts so
 important a case management tool as the ability to impose an
 appropriate and narrowly tailored sanction for discovery
 misconduct.
 
 
          ¶64
 Finally, I am not persuaded by the People's view, and the
 majority's suggestion, Maj. op. ¶ 21, that a
 continuance would have been a more appropriate sanction here,
 given that a continuance was inevitable anyway. I disagree
 with this view for several reasons.
 
 
          ¶65
 First, neither the People nor anyone else argued in this case
 that a continuance would be an appropriate sanction. To the
 contrary, as noted above, the People asserted that exclusion
 of late-disclosed discovery would be an appropriate sanction.
 I perceive no basis for concluding that the county court
 abused its discretion when it imposed a sanction that the
 People themselves proposed.
 
 28
 
          ¶66
 Second, for the reasons that we articulated in
 Tippet, ¶ 65, 539 P.3d at 559-60, a continuance
 here would not have served the purpose of either protecting
 the integrity of the truth-seeking process or deterring the
 People's discovery-related misconduct. To the contrary,
 delaying the preliminary hearing for a second time would have
 been prejudicial to Whittington. See id., 539 P.3d
 at 559. Moreover, for the reasons set forth in
 Tippet, rewarding the People's discovery
 violations by granting additional delay would have been
 "no deterrent at all." Id., 539 P.3d at
 560.
 
 
          ¶67
 Lastly, although the People assert that in the circumstances
 presented, a continuance was inevitable, they overlook the
 fact that a continuance was going to be required solely
 because they had provided substantial untimely disclosures on
 the morning of the preliminary hearing. Obviously, had the
 materials been disclosed on a timely basis, then no
 continuance would have been necessary, and it strikes me as
 circular to say that a continuance was an appropriate
 sanction, given that a continuance was inevitable, when the
 sole basis for a continuance would have been the very
 discovery misconduct that warranted a sanction in the first
 place.
 
 
          III.
 Conclusion
 
 
          ¶68
 For the foregoing reasons, and mindful of the high bar for
 establishing an abuse of discretion, I would conclude that
 the county court did not abuse its
 
 29
 
 discretion when it excluded from the preliminary hearing in
 this case evidence that was in the People's constructive
 possession by Crim. P. 16(I)(b)(1)'s deadline but that
 was not disclosed to Whittington until after that deadline.
 
 
          ¶69
 Accordingly, I would discharge our rule to show cause in this
 case, and therefore, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, the People presented the
 following issues in the petition:
 
 
 1. Did the county court abuse its discretion when it
 excluded evidence from the preliminary hearing as a punitive
 sanction under Colo. R. Crim. P. 16?
 
 
 2. Does a county court have the legal authority to
 sanction under Colo. R. Crim. 16?
 
 
 ---------