23CA1396 Peo v Tryels 02-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1396
Arapahoe County District Court No. 21CR1872
Honorable Shay K. Whitaker, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Davoisier Tryels,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Moultrie and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Davoisier Tryels, appeals his convictions for first degree assault causing serious bodily injury, first degree trespass, third degree assault, child abuse, and first degree burglary as a crime of violence.  He argues that (1) the prosecution presented insufficient evidence to prove that the victim suffered serious bodily injury; (2) the district court erred by excluding a defense witness; and (3) the trespass and burglary convictions must merge.  We agree with the last contention, reverse that portion of the judgment, and remand to the district court to merge the trespass and burglary convictions and amend the mittimus accordingly.  We otherwise affirm the judgment.

## I.    Background

¶ 2    One summer evening, the victim — Tryels' former romantic partner and the mother of his child — was at her apartment with her sister, their grandmother, and three children.  The victim's sister heard someone banging on the door.  When she opened the door, Tryels and an unknown woman "busted" into the apartment.

¶ 3    Upon entering the apartment, the woman punched the victim's sister in the face while Tryels headed straight toward the victim's bedroom.  Tryels forced his way into the bedroom, knocked the

victim backward into a dresser, and began strangling her with both hands for about forty-five seconds.  After the victim fell to the ground, Tryels punched her in the face and began strangling her again.  During the second strangling, the victim felt like she was going to have a seizure and "blacked out."

¶ 4    As Tryels was strangling the victim, the victim's sister saw their grandmother trying to pull Tryels off the victim.  The victim's sister then went to a neighbor's home and called 911.

¶ 5    The next thing the victim remembered was waking up in the hospital.

¶ 6    The prosecution charged Tryels with violation of a protection order, first degree assault, first degree trespass, third degree assault, child abuse, first degree burglary as a crime of violence, criminal mischief, and telephone obstruction.[1]

¶ 7    After a four-day trial, the jury acquitted Tryels of criminal mischief and telephone obstruction but convicted him of the remaining charges.

---

[1] The prosecution bifurcated the violation of a protection order count and later dismissed it.

¶ 8    The district court sentenced Tryels to a controlling sentence of fifteen years in prison.

## II.    Sufficiency of the Evidence

¶ 9    Tryels contends that the prosecution failed to present sufficient evidence to establish serious bodily injury, which is an element of first degree assault and a sentence enhancer for first degree burglary.  We disagree.

¶ 10    "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction."  *Johnson v. People*, 2023 CO 7, ¶ 13 (citation omitted).  To do that, we consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is "substantial and sufficient to support a conclusion by a reasonable mind" that the defendant is guilty of the charges beyond a reasonable doubt.  *Id.* (citation omitted).

¶ 11    As relevant here, a person commits assault in the first degree by strangulation if, "[w]ith the intent to cause serious bodily injury, he . . . applies sufficient pressure to impede or restrict the breathing or circulation of the blood of another person by applying such pressure to the neck . . . of the other person and thereby

3

causes serious bodily injury." § 18-3-202(1)(g), C.R.S. 2025.  And with respect to first degree burglary, a person is subject to crime of violence sentencing if he causes serious bodily injury to any person except another participant during the commission of the crime or in the immediate flight therefrom.  *See* § 18-1.3-406(2)(a)(I)(B), (2)(a)(II)(H), C.R.S. 2025.

¶ 12    Serious bodily injury means, as pertinent here, "bodily injury that, either at the time of the actual injury or at a later time, involves . . . a substantial risk of protracted loss or impairment of the function of any part or organ of the body."  § 18-1-901(3)(p), C.R.S. 2025.

¶ 13    At trial, the victim testified that Tryels put both of his hands on her neck twice and confirmed that she lost consciousness during the second incident.  She said she remembered feeling like she was going to have a seizure, "blacked out," and woke up in a hospital.

¶ 14    The jury also heard from a forensic nurse examiner (FNE) who conducted a physical exam and strangulation assessment when the victim was in the hospital.  The FNE documented signs of strangulation, including petechiae inside the victim's cheek and bruising around her neck.  And she documented the victim's

reported symptoms, including loss of consciousness during the strangulation and post-strangulation neck pain, neck swelling, headache, numbness, weakness, and memory loss.

¶ 15 The FNE also explained to the jury that when blood doesn't get to the brain — known as an anoxic event — the result is permanent brain cell death. And she testified that if someone loses consciousness, "they had an anoxic event." Based on the victim's description of events and reported loss of consciousness, the FNE opined that the victim had suffered a serious bodily injury, specifically, "an anoxic" injury that resulted in "substantial risk of protracted loss or impairment of an organ, which was the brain."

¶ 16 An emergency room doctor testified that although he did not examine the victim, he reviewed her CT scan, which showed "no immediate risk of death."[2] Based on the negative CT scan, the doctor found no serious bodily injury. But he confirmed that a CT scan doesn't show all injuries. And while he did not opine on

---

[2] The doctor testified that a CT scan, or a CAT scan, is "a machine that you go into. There's a computer that sends radiation into [your] body." Then "[c]ertain tissues reflect this radiation," which "comes back to the machine so it can generate pictures on a computer screen."

whether the victim had suffered an anoxic event, the doctor agreed that "at some point if you cut off oxygen to somebody's brain, brain cells will die." And once those brain cells die, they are "gone forever."

¶ 17 Viewing this evidence in the light most favorable to the prosecution, there was substantial and sufficient evidence from which the jury could reasonably find beyond a reasonable doubt that Tryels inflicted serious bodily injury on the victim.

¶ 18 Even so, Tryels insists that the evidence showed only that the victim "could have lost one or more brain cells," not that she suffered any actual injury from the strangulation. That's not correct. As just detailed, substantial evidence showed that the victim suffered anoxia. And both the forensic nurse examiner and the emergency room doctor confirmed that anoxia results in the permanent loss of brain cells. Neither testified that anoxia "could have resulted" in the loss of brain cells. Thus, the evidence was not speculative; it was tethered directly to the victim's actual injury — the lack of oxygen to her brain resulting in the permanent loss of

brain cells.  And Tryels doesn't dispute that the brain is an "organ of the body."  § 18-1-901(3)(p).[3]

¶ 19     *People v. Vigil*, 2021 CO 46, and *Stroup v. People*, 656 P.2d 680 (Colo. 1982), on which Tryels relies, don't change anything.  While *Vigil* and *Stroup* conclude that evidence about the risk generally associated with the type of conduct or injury is insufficient to prove a serious bodily injury, both agree that "the facts of the actual injury control" the serious bodily injury determination.  *Vigil*, ¶ 33; *see Stroup*, 656 P.2d at 685.  And here the victim's actual injury supports the jury's serious bodily injury finding.

¶ 20     To the extent Tryels alternatively asks us to draw different inferences from the negative CT scan, the lack of expert testimony about the victim's epilepsy, or the lack of more specific evidence of brain impairment — such as evidence about the victim's memory before and after the strangulation — we won't do that.  The jury weighs the evidence and resolves evidentiary conflicts or

---

[3] Because we conclude that the evidence was substantial and sufficient to show that the victim suffered an anoxic event, we don't address Tryels' argument challenging the forensic nurse examiner's determination that the victim suffered a "probable concussion," which the nurse also concluded was a serious bodily injury.

inconsistencies.[4]  *See People v. Perez*, 2016 CO 12, ¶ 25 (in conducting a sufficiency analysis, we do not "serve as a thirteenth juror or invade the province of the jury" (citation omitted)).

¶ 21    For these reasons, we conclude that sufficient evidence supported the jury's finding that Tryels caused serious bodily injury.

### III.    Witness Exclusion

¶ 22    Tryels next contends that reversal is required because the district court excluded a defense witness — Amari Parks — from testifying at trial as a sanction for defense counsel's failure to timely endorse Parks under Crim. P. 16.  We aren't persuaded.

¶ 23    Before trial, the parties knew that Parks was possibly the woman who entered the victim's apartment with Tryels and assaulted the victim's sister.  But defense counsel did not endorse Parks as a defense witness.

---

[4] And indeed, that's what defense counsel argued in closing argument.  He specifically pointed the jury to the doctor's testimony about the negative CT scan and the doctor's lack of serious bodily injury finding and argued that the jury should credit the testimony of the doctor over that of the forensic nurse examiner.

¶ 24    On the third day of trial, defense counsel informed the court that Parks was present, and that he intended to call her as a witness. He explained that she would testify that she was not present when Tryels strangled the victim and that she did not assault the victim's sister.

¶ 25    The prosecution objected, arguing that the endorsement was untimely, unfair, and irrelevant, and asked the court to preclude Parks.

¶ 26    The court found that the defense had been aware for several months that Parks would testify she wasn't with Tryels in the victim's apartment, the defense could have timely endorsed her, and her testimony had limited relevance. The court was also concerned about Parks' possible Fifth Amendment rights (since the victim's sister raised the possibility that Parks was the woman who had assaulted the sister). Considering all this, the court barred the defense from calling Parks to testify.

¶ 27    Rule 16 governs discovery in criminal cases. *People v. Dye*, 2024 CO 2, ¶ 36. For felony charges, it requires the defense to disclose no less than thirty-five days before trial "the names and

addresses of persons whom the defense intends to call as witnesses at trial." Crim. P. 16(II)(c).

¶ 28    When — as here — the defense doesn't timely disclose a trial witness, a district court has broad discretion to determine an appropriate sanction. *See People v. Whittington*, 2024 CO 65, ¶ 17. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Knisley*, 2022 CO 59, ¶ 21.

¶ 29    To craft an appropriate discovery sanction, the court must consider (1) the reason for and degree of culpability associated with the discovery violation; (2) any prejudice to the other party; (3) whether any circumstances mitigate such prejudice; (4) reasonable and less drastic alternatives to exclusion; and (5) other relevant facts. *People v. Tippet*, 2023 CO 61, ¶ 37.

¶ 30    Though the court didn't expressly list the *Tippet* factors in its discussion regarding the defense's failure to comply with Rule 16, we conclude that it considered the appropriate factors when it barred Parks from testifying. The court highlighted that the defense had known about Parks for many months and knew the substance of her testimony, yet "the proper endorsement was not made." It

also noted that any testimony that Parks was not present during the charged crimes was minimally relevant. Beyond that, implicitly contemplating less drastic alternatives to exclusion, the court expressed concern that Parks was "a witness who probably need[ed] counsel" to address her Fifth Amendment rights. And it observed that "had [Parks] been properly endorsed, we could have addressed this at the beginning of trial." But given the late endorsement, the court was unable to secure counsel to advise Parks in the middle of trial.

¶ 31     Under these circumstances, we cannot conclude that the court abused its discretion by barring an unendorsed witness long known to the defense. *See People v. Dist. Ct.*, 808 P.2d 831, 838 (Colo. 1991) (an appellate court defers to a district court's factual finding regarding the nature of a discovery violation if it is supported by competent evidence in the record).

¶ 32     Even had the court erred — and we don't think it did — Parks' proposed testimony that she wasn't at the victim's apartment and thus could not have witnessed any of the events at issue added nothing to Tryels' defense (which was general denial). Excluding

11

that testimony did not affect the trial's outcome under any standard of reversal.

## IV.　Merger

¶ 33　Tryels argues that first degree trespass is a lesser included offense of first degree burglary, and, accordingly, that his trespass conviction should merge into his burglary conviction. *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 64 (discussing lesser included offenses). The People agree, and under the facts presented here, so do we. *See People v. Miller*, 2024 COA 66, ¶ 70 ("[F]irst degree criminal trespass is a lesser included offense of first degree burglary . . . ."); *see also Whiteaker v. People*, 2024 CO 25, ¶ 20 (holding that first degree criminal trespass is a lesser included offense of second degree burglary). We therefore reverse and remand to the district court to merge the trespass and burglary convictions. .

## V.　Disposition

¶ 34　The portion of the judgment showing separate convictions for trespass and burglary is reversed. We remand to the district court to merge the trespass and burglary convictions and amend the mittimus accordingly. The judgment is otherwise affirmed.

12

JUDGE MOULTRIE and JUDGE HAWTHORNE concur.