**In re the PEOPLE of the State of Colorado, Plaintiff,**

v.

**Johnny LEE, Defendant.**

**No. 00SA258.**

Supreme Court of Colorado, En Banc.

Feb. 20, 2001.

Mary W. Keenan, District Attorney, Twentieth Judicial District, William F. Nagel, Chief Appellate, Deputy District Attorney, Boulder, CO, Attorneys for Petitioner.

Nancy Holton, Boulder, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

The People petitioned for relief pursuant to C.A.R. 21 from an order of the district court excluding evidence in a felony prosecution as a sanction for a discovery violation. The district court barred the introduction of a DNA comparison intended to link the defendant to a hair recovered from the scene of the alleged crimes because the prosecution failed to provide data indicating the statistical significance of the DNA profile match at least thirty days before trial. This court issued its rule to show cause why the order should not be vacated, and the defendant responded. Under the circumstances of this case, exclusion of the evidence amounted to an abuse of discretion. Therefore the rule is made absolute, and the case is remanded to the district court for further proceedings consistent with this opinion.

## I.

The defendant, Johnny Lee, was charged with second degree kidnapping, three counts of sexual assault, conspiracy, and committing a crime of violence in connection with the alleged abduction and repeated assaults on a woman by six assailants in Boulder on August 28 and 29, 1999. At the preliminary hearing, the victim testified that, among other things, she was grabbed while walking on a street, forced into a van, and raped repeatedly by six Asian males. Five suspects, including the defendant in this case, all of whom were from the Hmong community,[1] were arrested in connection with the incident. Separate trials were ordered, with the defendant's trial originally scheduled to begin on April 17, 2000.

In the course of investigating the crimes, the police recovered semen from the victim and numerous pubic hairs from the van in which the rapes were allegedly committed. The semen sample was tested first, with results indicating contribution primarily by two of the other suspects and possibly in small part by the defendant. In January

2000, one of the co-defendants filed a motion entitled, "Motion for Exclusion of DNA, PCR Testing[2] and Statistical Frequencies." The trial court heard the motion on April 12, 13, and 21, 2000. By the time of the hearing, the co-defendant who originally filed the motion had pled guilty, but the remaining four co-defendants, including Lee, participated, and subsequently Lee formally adopted the motion.

At the hearing, in addition to litigating the scientific acceptability of DNA comparisons by the PCR method, the defendants also challenged the relevance of the Colorado Bureau of Investigation's analysis of the significance of a "match" between the defendant's DNA profile and that extracted from the semen sample. The significance of a DNA match is typically expressed in terms of the likelihood that the matter recovered from the crime scene came from a third person rather than the defendant. This likelihood is calculated by determining the frequency with which the particular DNA profile is found in the target population, which is in turn determined by the suspect's race. *Fishback v. People*, 851 P.2d 884, 888 (Colo.1993). The prosecution apparently agreed that the databases used by the Colorado Bureau of Investigation for Caucasian, African–American, and Southwestern Hispanic populations were inappropriate, but defense and prosecution experts disagreed about an appropriate database. In contrast to the defense expert, an expert for the prosecution testified that the differences between the Hmong population and the Asian population generally were insignificant, and that a general Asian database would be appropriate for establishing the required frequencies. Near the conclusion of the hearing, the prosecution summarized the dispute and indicated that upon the court's ruling as to the appropriate database, it would be able to prepare its statistical analysis of the DNA evidence. The court took the matters under advisement.

On March 31, 2000, one of the pubic hairs recovered from the van was determined to be

---

1. The sixth suspect committed suicide before the police could arrest him.

2. Polymerase chain reaction amplification ("PCR") is a process by which a small segment of a DNA strand is duplicated several times to facilitate its analysis.

microscopically consistent with those of the defendant. The hair had not, however, been subjected to DNA testing at the time of the April hearing. DNA testing of the hair was delayed several times, for the benefit of the defense and due to scheduling conflicts with the experts. As the result of several unrelated motions by the defense, the defendant's speedy trial period was also waived and his trial continued, eventually being rescheduled for August 21, 2000. The pubic hair in question was ultimately tested in the presence of both prosecution and defense experts on June 27, 2000, and in a report dated July 5, 2000, the Colorado Bureau of Investigation concluded that the DNA profile of the hair matched that of the defendant. The prosecutor indicated that she first received the report on July 11 and immediately forwarded it to defense counsel. At that time it did not include an analysis of the results relative specifically to the Asian population.

In late June, before any ruling on the PCR and relevant population issues, a different judge took over the case from the judge who had conducted the April hearing. The successor judge scheduled a hearing on remaining motions for July 25, 2000. On the morning of the hearing the court distributed a written order dated July 18, finding that the PCR method of DNA comparison met the standards of acceptability of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), but it excluded any evidence of DNA found in the tested semen mixture on the grounds that the Colorado Bureau of Investigation had not been able to connect it to the defendant in any statistically significant manner. Having found the DNA comparison from the recovered semen inadmissible against the defendant, the court's order did not address the question of relevant databases.

Late in the July 25 hearing, the court entertained argument on the issues surrounding the DNA testing of the recovered pubic hair. Emphasizing the meaninglessness of a match of DNA profiles without an analysis of its statistical significance, the court found the production of such a statistical analysis to be the obligation of a party seeking to introduce DNA evidence, and it questioned why such an analysis had not previously been ordered and provided to the defendant. The prosecution responded with an explanation, detailing the proceedings before the original trial judge and indicating its understanding that the court would resolve the disputed questions raised at the first DNA hearing involving the acceptability of the PCR method and the appropriate database in this case—Hmong or Asian—before further expensive, and possibly unnecessary, analyses would be required. Without resolving questions of fact and credibility or assessing the reasonableness of this interpretation of the earlier proceedings, the trial court ruled that it was the prosecution's burden to present a report of the statistical significance of the DNA results, and having failed to do so twenty-six days before the scheduled trial date, the prosecution had violated the thirty-day requirement of Crim. P. 16(I)(b)(3). It therefore concluded that evidence of the DNA testing of the recovered pubic hair would not be admitted at trial.[3]

The People filed a motion to reconsider the next morning, indicating that they already had the completed statistical analysis based on a general Asian database in hand. That motion was denied without hearing.

## II.

Exercise of the supreme court's original jurisdiction is entirely within its discretion. *People v. District Court,* 869 P.2d 1281, 1285 (Colo.1994). Relief pursuant to C.A.R. 21 is appropriate to correct an abuse of discretion by a lower court where no other remedy would be adequate. *Id.; People v. District Court,* 664 P.2d 247, 251 (Colo.1983). Although challenges to discovery rulings are typically the subject of an appeal, *People v. District Court,* 894 P.2d 739, 742 (Colo.1995), it can be appropriate to review discovery

---

**3.** The district court ruled:

It is the Prosecution's burden to present evidence of the crucial fourth step before DNA is admissible. To this date, July 25, 2000, the Prosecution has not done that and at this time does not have that evidence. Pursuant to [Crim. P. 16], such evidence had to be delivered to the Defense 30 days before trial. Because it was not, DNA testing ... will not be admitted at trial.

orders interlocutorily, by way of original proceeding, where the impact of the ruling would be substantial and incurable at a later time. *See People v. District Court*, 664 P.2d at 251; *see also People v. District Court*, 898 P.2d 1058, 1060 (Colo.1995); *People v. District Court*, 869 P.2d at 1285. It is likely that the exclusion of DNA evidence in this case would significantly hinder the prosecution's ability to litigate the merits of the case, and constitutional jeopardy considerations would bar retrial after an acquittal, even if exclusion of the evidence were later determined to be erroneous. *People v. District Court*, 898 P.2d at 1060; *People v. District Court*, 664 P.2d at 251.

Colorado's rules governing discovery in criminal cases require the prosecution to provide the defendant with various materials in its possession, including the results of "scientific tests, experiments, or comparisons." Crim. P. 16(I)(a)(1)(III). Such disclosure must be made "as soon as practicable but not later than thirty days before trial." Crim. P. 16(I)(b)(3). Related to this deadline is the prosecutor's duty to "ensure that a flow of information is maintained between the various investigative personnel and his office sufficient to place within his possession or control all material and information relevant to the accused and the offense charged." Crim. P. 16(I)(b)(4); *see also People v. District Court*, 793 P.2d 163, 167 (Colo.1990); *Chambers v. People*, 682 P.2d 1173, 1180 (Colo. 1984). The duty to disclose additional materials or information discovered subsequent to compliance with the discovery standards continues through the trial, Crim. P. 16(III)(b), and for good cause, a court may alter the discovery deadlines of the rules. Crim. P. 16(V)(b)(3).

■ In the event that a discovery violation is found, the decision whether to impose a sanction is within the sound discretion of the trial court. *See People v. District Court*, 793 P.2d at 167; *Chambers*, 682 P.2d at 1180. Because of the multiplicity of considerations involved and the uniqueness of each case, great deference is owed to trial courts in this regard, and therefore an order imposing a discovery sanction will not be disturbed on appeal unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Castro*, 854 P.2d 1262, 1265 (Colo.1993).

■ The discretion of the trial court in fashioning a remedy is not, however, unlimited. *People v. District Court*, 808 P.2d 831, 836 (Colo.1991). A trial court's discretion must be exercised with due regard for the purposes of the discovery rules themselves and the manner in which those purposes can be furthered by discovery sanctions. The imposition of discovery sanctions generally serves the dual purposes of protecting the integrity of the truth-finding process and deterring discovery-related misconduct. *People v. Cobb*, 962 P.2d 944, 949 (Colo.1998); *People v. District Court*, 808 P.2d at 836. Therefore, among the factors that a trial court should consider in fashioning the appropriate sanction are (1) the reason for the delay in providing the requisite discovery; (2) any prejudice a party has suffered as a result of the delay; and (3) the feasibility of curing such prejudice by way of a continuance or recess in situations where the jury has been sworn and the trial has begun. *People v. Dunlap*, 975 P.2d 723, 755 (Colo. 1999); *People v. Castro*, 854 P.2d 1262, 1265 (Colo.1993); *People v. District Court*, 793 P.2d at 168.

■ Under certain circumstances, the exclusion of evidence or even complete dismissal can be proper remedies to assure compliance with discovery orders. *See, e.g., People v. Thurman*, 787 P.2d 646, 655 (Colo. 1990) (holding that trial court did not abuse its discretion in dismissing criminal charges pursuant to Crim. P. 16(III)(g) in response to prosecution's willful and continuing refusal to disclose confidential informant's address and place of employment notwithstanding court order to do so); *People v. District Court*, 664 P.2d at 252 (approving trial court's sanction excluding fingerprint evidence implicating defendant where district attorney failed to comply with a specific discovery order or obtain defendant's fingerprints for nearly nine months, causing a mistrial). However, in the absence of willful misconduct or a pattern of neglect demonstrating a need for modification of a party's discovery practices, the rationale for a deterrent sanction loses much of its force. Particularly in the criminal justice

context, "the need to find the truth is the paramount interest at stake." *Cobb*, 962 P.2d at 949. Where a sanction is deemed necessary, therefore, the trial court should impose "the least severe sanction that will ensure that there is full compliance with the court's discovery orders." *Id.; People v. Dunlap*, 975 P.2d at 754; *People v. District Court*, 793 P.2d at 168.

When a sanction primarily designed to deter is not appropriate, the goal must be to cure any prejudice resulting from the violation. While striving to restore a "level playing field," a trial court should similarly be cautious not to affect the evidence to be introduced at trial or the merits of the case any more than necessary. *People v. District Court*, 808 P.2d at 837; *People v. District Court*, 793 P.2d at 168. If at all possible, a trial court should avoid excluding evidence as a means of remedying a discovery violation because the attendant windfall to the party against whom such evidence would have been offered defeats, rather than furthers, the objectives of discovery. *People v. District Court*, 793 P.2d at 168; *see also Cobb*, 962 P.2d at 949 ("[E]xclusion is a drastic remedy and therefore is strongly disfavored, especially since in many cases it may well determine the outcome of the trial."); *cf. People v. District Court*, 808 P.2d at 837 (indicating that the "exclusion of evidence is an inappropriate sanction where exculpatory evidence, although inadvertently withheld prior to the preliminary hearing, was revealed prior to trial"). The ultimate purpose of discovery sanctions, like the discovery process itself, is to advance the search for truth. *People v. District Court*, 793 P.2d at 168. Therefore, any prejudice resulting from a violation should be cured by a less severe sanction, such as a continuance, whenever possible.

At the July 25 hearing, the trial court was clearly correct in articulating the relationship between DNA profiling and a statistical analysis giving meaning to particular results. Unless the results of a scientific test or comparison are self-evident, the test lacks relevance without expert interpretation of its results. *See Fishback*, 851 P.2d at 893 & n. 18. To the extent that the interpretation of a scientific test is itself a matter of specialized knowledge requiring the explanation of an expert, disclosure of the calculations or report of that expert is equally within the discovery obligation of the party offering the test results. However, the trial court failed to account for the prior proceedings in the case, and it assessed the prosecutor's obligation exclusively according to a rule requiring disclosure of expert reports within the possession and control of the prosecution at least thirty days before trial. Furthermore, without acknowledging its own discretion to fashion an appropriate remedy or recognizing the drastic nature of excluding evidence, the court excluded the DNA evidence as if exclusion were an automatic or mandatory sanction.

In fact, there was no suggestion that the prosecuting attorney withheld information within her possession or control or that of any investigative agency. She failed to order a final statistical analysis of DNA test results relative to a particular population, which she represented to be beyond the capabilities of the Colorado Bureau of Investigation. Although she knew that an analysis of the data relative to some population would be required, the testing was novel and expensive, and she represented that she had made arrangements with an expert for the analysis to be conducted immediately upon the court's rulings on PCR testing and the appropriate database for this defendant. Furthermore, she had presented this understanding of the sequence of further analysis in open court, without objection or correction by the defendant or court. No more express or conflicting scheduling order was relied upon by either party. Whether or not this conduct amounted to a violation of the prosecutor's duty to adequately ensure the continued flow of information and investigation, it was at least understandable under these circumstances that the prosecutor considered herself to be in compliance with the court's scheduling directives. In ordering exclusion, the trial court did not find a willful violation of the prosecutor's discovery obligations or suggest in any way the need for a sanction designed to deter future violations. *Cf. People v. District Court*, 808 P.2d at 838 (ac-

knowledging that deterrence can retain role under some circumstances when violation was not willful).

Neither does the record indicate a need for excluding DNA evidence to cure any prejudicial impact on the defendant. While the statistical analysis based upon the Asian database was not performed and disclosed until twenty-six days before trial, the DNA testing of the recovered pubic hair itself was completed only two weeks earlier, at least in part to accommodate the defendant and defense expert. The application of a general Asian database should not have been a surprise because virtually identical issues involving statistical interpretation and the appropriate database for use in this case had already been litigated months earlier with respect to the semen samples. Nothing in the record indicated that disclosure of the statistical analysis four days beyond the thirty-day time limit of Crim. P. 16(I)(b)(3) would have adversely affected defense preparation to such an extent that a continuance would have been necessary. Even if that were the case, however, there was no indication that a further continuance would have been inadequate to compensate for any violation or would have unfairly prejudiced the defendant.[4] Because of its potentially distorting effect on truth finding, the exclusion of evidence would have been appropriate only where a less severe sanction, such as a continuance, would be inadequate. *See People v. District Court*, 793 P.2d at 168–69.

Finally, the exclusion of DNA profile evidence in this case would not be insignificant. Regardless of other potential evidence identifying the defendant as a perpetrator of the crime, DNA evidence that is subjected to appropriate discovery and cross-examination may be the most reliable evidence of the defendant's presence at the crime scene. Where identification is an issue, exclusion of DNA evidence could therefore be expected to have a tremendously distorting effect on the search for truth. While there may nevertheless be circumstances in which the exclusion of material evidence, or complete dismissal, is warranted to enforce compliance with the rules of discovery, except where absolutely necessary to insure fairness, the factfinder in a criminal prosecution should not be forced to rest its verdict on less probative evidence when more probative evidence is available.

### III.

■ Where the record supported the prosecutor's explanation that she was complying with her understanding of the court's earlier directives, a sanction primarily designed to modify prosecutorial discovery practices or insure future compliance with discovery rules would have been inappropriate. Similarly, it was not apparent from the record that a continuance would have been inadequate to cure any prejudice suffered by the defendant as the result of receiving the statistical-analysis component of the DNA testing only twenty-six days before trial. Under the circumstances of this case, the trial court's exclusion of DNA evidence intended to link the defendant to a pubic hair recovered from the scene of the alleged sexual assaults was therefore an abuse of discretion. The trial court's order is vacated, and the case is remanded for further proceedings consistent with this opinion.

---

4. Because the defendant had waived his statutory right to a speedy trial on April 6, 2000, that right would not have been implicated in any way by a short continuance.