24CA1992 Peo v Whiteside 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1992
El Paso County District Court No. 24CR312
Honorable Samuel A. Evig, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Brandon Michael Whiteside,

Defendant-Appellee.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Michael J. Allen, District Attorney, Jessica Kiel, Deputy District Attorney,
Claire Nutter, Deputy District Attorney, Tanya A. Karimi, Deputy District
Attorney, Colorado Springs, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Deana O'Riley, Deputy State
Public Defender, Colorado Springs, Colorado, for Defendant-Appellee

¶ 1     The District Attorney for the Fourth Judicial District appeals the district court's order imposing sanctions for discovery violations.  We affirm.

## I.     Background

¶ 2     In January 2024, the prosecution charged Brandon Michael Whiteside with seven counts stemming from allegations that, for the past eight years, he repeatedly sexually assaulted his sixteen-year-old stepdaughter.  In July 2024, Whiteside pleaded not guilty, and a trial date was scheduled for November 5, 2024.

¶ 3     Just before trial, defense counsel moved for dismissal of the case or exclusion of evidence because the prosecution had violated Crim. P. 16 by failing to timely disclose DNA test results, DNA expert disclosures, and a DNA litigation packet.  Defense counsel alleged that the prosecutor waited until August 2024 to submit the DNA evidence for testing, "know[ing] there would be no meaningful opportunity for the Defense to assess the [DNA] evidence . . . in time for the currently scheduled jury trial."  Counsel also asserted that sanctions were appropriate because the prosecutor "has a pattern and practice of violating Rule 16" based on two prior incidents where she was found to have violated discovery deadlines.  In

1

support of her claim, defense counsel provided a transcript from another case where a different district court judge had found "a pattern of violations" by the same prosecutor and "a pattern of failure to disclose consistent with Rule 16 . . . within the confines of [the] case."

¶ 4      After a hearing, the district court found that the prosecution had violated Crim. P. 16 by failing to timely disclose the DNA test results, expert disclosures, and litigation packet.  Though the court found that the prosecution had no obligation to submit DNA evidence for testing by any particular date before trial, the disclosures to the defense were made beyond the deadlines outlined in Crim. P. 16.  And based on the ongoing pattern of discovery violations particular to this prosecutor, the court found, sanctions were appropriate "to deter this conduct."  After weighing the dual purposes of the discovery rules — protecting the integrity of the truth-finding process and deterring discovery-related misconduct — the court dismissed counts six and seven.

## II.    Discussion

¶ 5      The prosecution contends that the district court's findings were insufficient to support its deterrent sanction because they

didn't address the significance of the discovery violations or how they demonstrated a need for deterrence. We disagree.

### A. Standard of Review

¶ 6 We review a district court's resolution of discovery issues and imposition of sanctions for an abuse of discretion. *People v. Tippet*, 2023 CO 61, ¶ 34. "Because of the multiplicity of considerations involved and the uniqueness of each case, great deference is owed to trial courts in this regard . . . ." *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001). Therefore, we won't disturb a discovery sanction unless the sanction is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. *Id.*; *see also Tippet*, ¶ 64 ("Under the abuse of discretion standard, a reviewing court doesn't ask whether it would have ruled as the trial court did, but instead considers 'whether the trial court's decision fell within a range of reasonable options.'" (quoting *Churchill v. Univ. of Colo. at Boulder*, 2012 CO 54, ¶ 74)).

### B. Analysis

¶ 7 Crim. P. 16(I)(a)(1) provides that "[t]he prosecuting attorney shall make available to the defense . . . material and information which is within the[ir] possession or control . . . concerning the

pending case." This obligation must be performed "as soon as practicable but not later than 35 days before trial." Crim. P. 16(I)(b)(3).

¶ 8 In the event the prosecution fails to comply with the provisions of Crim. P. 16, the rule permits the court to order sanctions that it "deems just under the circumstances." Crim. P. 16(III)(g). When imposing such sanctions, the court must shape remedies with an eye toward protecting the integrity of the truth-finding process and deterring discovery-related misconduct. *People v. Whittington*, 2024 CO 65, ¶ 19. And the court must consider:

> (1) the reason for and degree of culpability associated with the violation; (2) the extent of resulting prejudice to the other party; (3) any events after the violation that mitigate such prejudice; (4) reasonable and less drastic alternatives to exclusion; and (5) any other relevant facts.

*Tippett*, ¶ 37 (quoting *People v. Cobb*, 962 P.2d 944, 949 (Colo. 1998)).

¶ 9 Because the core purpose of the discovery process is to "advance the search for truth," *People v. Dist. Ct.*, 793 P.2d 163, 168 (Colo. 1990), sanctions may be either curative or, where "willful misconduct or a pattern of neglect demonstrat[es] a need for

4

modification of a party's discovery practices," deterrent or punitive. *Lee*, 18 P.3d at 196-97; *see Whittington*, ¶ 19; *Tippet*, ¶ 53. When a district court "imposes a discovery sanction to deter future misconduct, the goal is to impose a sanction that sufficiently encourages a 'modification of a party's discovery practices.'" *Tippet*, ¶ 39 (quoting *People v. Daley*, 97 P.3d 295, 298-99 (Colo. 2004)).

¶ 10    Relying on *Whittington*, the prosecution asserts that the district court failed to make specific findings in support of the deterrent sanction it imposed.

¶ 11    In *Whittington*, the county court found that the prosecution had violated Crim. P. 16 by failing to timely disclose certain evidence in accordance with the rule. *Whittington*, ¶ 11. However, despite the court's findings "that it lacked sufficient evidence to conclude that the People's untimely disclosures . . . were part of a larger pattern of violations" and that the late and missing disclosures weren't the result of any "bad intent," the court excluded the evidence from the preliminary hearing. *Id.* at ¶¶ 9-10. Reversing the court's order imposing sanctions, our supreme court concluded that the county court had abused its discretion when it imposed sanctions that "exceeded what was reasonably appropriate

to ensure compliance with the discovery rules, without first finding either willful misconduct or a pattern of discovery violations by the sanctioned party." *Id.* at ¶ 14.

¶ 12 But unlike the county court in *Whittington* — which specifically found no willful misconduct and no basis for concluding that the prosecution exhibited a pattern of discovery violations, *id.* at ¶ 22 — the court here *did* find that the prosecutor had engaged in a pattern of discovery violations sufficient to warrant a deterrent sanction. The court specifically referenced findings made by another district court judge in a prior case. That judge previously found that the same prosecutor had exhibited "a pattern of failure to disclose" both "within the confines of [that] case" as well as "in [that] very jurisdiction." In reliance on the transcript of the prior judge's findings and after taking judicial notice of the prior case's court file, the district court determined that a deterrent sanction was appropriate. The court reasoned that "to allow this just to pass with no other sanction is . . . inappropriate and the court is basing that on the fact that there are two other situations identified in that transcript that had become problematic." Based on these findings, we can't conclude that the court abused its discretion by imposing

a deterrent sanction. *Cf. United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001) (affirming trial court's exclusion of DNA evidence where the government's untimely disclosure of the evidence "ma[de] it virtually impossible, absent a continuance, for defendants to evaluate and confront the evidence against them").

¶ 13    We aren't persuaded otherwise by the prosecution's argument that the court's findings were insufficient under *Tippet*. In *Tippet*, the supreme court upheld the imposition of a deterrent sanction — the reduction of a first degree murder charge to second degree murder — after the district court found that the district attorney's office had engaged in a pattern of neglectful discovery practices. *Tippet*, ¶ 47.

¶ 14    The prosecution argues that the pattern of neglect here — involving three cases — was "woefully short" of that in *Tippet*, where the district court examined twenty prior cases involving discovery violations. But the prosecution doesn't dispute, and the record confirms, that the prosecutor violated her discovery obligations in this case and that the other judge found that she had committed discovery violations in two other cases. Moreover, to the extent the prosecution suggests that three cases is insufficient for a "pattern"

finding, we disagree. As noted by the court in *Tippet*, "the term 'pattern' already has a generally understood meaning" — a "mode of behavior or series of acts that are recognizably consistent." *Id.* at ¶ 50 (citation omitted). Violations in three cases, depending on the circumstances, could certainly satisfy this definition. *Cf. New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993) ("pattern of racketeering" under the Colorado Organized Crime Control Act means "engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise") (citation omitted); *see also United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 124 (5th Cir. 1973) (three violations of the Fair Housing Act "were sufficient to establish a pattern or practice"); *Shaw-Reed v. Child.'s Outing Ass'n*, 172 F.3d 53 (7th Cir. 1999) (unpublished table decision) (affirming dismissal of case as a sanction where the trial court found the plaintiff had violated three discovery orders).

¶ 15 Furthermore, the supreme court in *Tippet* noted that the sheer number of discovery violations in that case, "in the face of repeated admonishments," wasn't just a pattern of negligent discovery practices but "could certainly be considered willful." *Tippet*, ¶ 55.

Thus, that the prosecutor in this case engaged in discovery violations in three cases, as opposed to twenty, doesn't undercut the court's finding that a deterrent sanction was warranted to encourage a "modification of [the prosecution's] discovery practices." *Daley*, 97 P.3d at 298.

¶ 16 We also disagree with the prosecution's assertion that the district court's review of the transcript that the defense provided was "inaccurate," and that the court's findings were "non-existent." The prosecution asserts that the court's findings based on the transcript were inaccurate because the district court judge in the prior case "never ruled that [late disclosure of the videos] was a discovery violation"; rather, the discovery violation related only "to the late disclosure of the spreadsheet and related documents." Not so. The district court judge in the prior case explicitly found that "there's been a violation of discovery protocol as it relates to, not only the Xcel spreadsheet . . . [but also] the 11, two-minute videos."

¶ 17 As to the prosecution's argument that the court's findings were "non-existent" because it "failed to identify or specify the second prior finding," we note that the court explained that it based its deterrent sanction on "the two prior findings involving [the

prosecutor] here" as "identified in [the] transcript" provided by defense counsel. Although the court didn't expressly recount that second instance, the prosecution acknowledges that the transcript reveals that it involved the same prosecutor's failure to timely disclose Department of Human Services records to the defense in yet another case. Nothing in the record suggests that the court failed to examine the circumstances of this second violation when fashioning its deterrent sanction. Moreover, that the court didn't detail the precise neglectful discovery practices common to each case doesn't mean that its findings were insufficient to support the sanction imposed. Rather, for a deterrent sanction to be upheld, a court must make "findings explaining the sanction." *Whittington,* ¶ 23. Our review of the record confirms that the court did so here.

¶ 18     Specifically, the district court expressly discussed the difficulty it faced in fashioning a sanction to deter future Crim. P. 16 violations by this prosecutor, while also preserving the truth-seeking function of discovery. *See Tippet,* ¶ 54. The court reasoned that dismissal of the case "would be a drastic remedy" but wondered whether, on the facts before it, a continuance would be sufficient. Concluding that a continuance alone wouldn't "deter

this conduct," the court considered what other sanctions were available that would "influence the evidence in the case to the least amount possible." Reasoning that exclusion of the DNA evidence would go too far by putting the court in the position of "placing its hands on those scales," the court settled on dismissal of counts six and seven.

¶ 19    While dismissal of these two counts wasn't inconsequential, we can't say on the facts presented that the court abused its discretion by finding that dismissing those counts constituted the least severe sanction that would ensure full compliance with the prosecution's discovery obligations in the future. *See id.* at ¶ 69. Like the court in *Tippet,* the court here had limited options from which to select an appropriate sanction. *See id.* at ¶ 65. A continuance wouldn't have sufficed because granting a delay where the prosecution exhibits a pattern of discovery violations "is no deterrent at all." *Id.* And given the nature of the evidence contained in the delayed discovery — DNA evidence comparing Whiteside's DNA to "unknown samples . . . from the alleged victim's bed and the trashcan" — exclusion of the evidence would have been an extreme remedy that wouldn't have advanced the search for the

truth. *See id.* at ¶ 67. Likewise, complete dismissal of the case wouldn't have served the truth-seeking purpose of the criminal justice system. *See id.* at ¶ 68.

¶ 20 However, based on the facts and circumstances here, the court's dismissal of two of the least serious offenses was an appropriately narrow sanction. Whiteside was charged with five class 3 felonies (counts one, three, four, six, and seven) and two sentence enhancers (counts two and five). If proved at trial, the sentence enhancers would increase Whiteside's possible sentence on counts one and four from a mandatory eight to twenty-four years to life in prison to a mandatory eighteen to thirty-two years to life in prison. *See* § 18-1.3-1004(1)(e)(I), (II)(B), C.R.S. 2024. The court didn't disturb these counts. The court also kept intact count three (sexual assault on a child by one in a position of trust — pattern), which requires a mandatory prison sentence of eight to twenty-four years to life in prison. *See* §§ 18-3-405.3(4), 18-1.3-406, 18-1.3-401(1)(a)(V)(A), 18-1.3-1003(5)(a)(V), 18-1.3-1004(1)(a), C.R.S. 2024. The counts the court dismissed, in contrast, carry possible penalties that are either less severe or equal in severity. Dismissed count six (aggravated incest) carries a nonmandatory sentence of

12

four to twelve years to life in prison, or a sentence to probation of twenty years to life. *See* §§ 18-6-302(2), 18-1.3-1003(5)(a)(IX), 18-1.3-1004(1)(a), (2)(a), 18-1.3-401(1)(a)(V)(A), (V)(A.1), (V.5)(A), C.R.S. 2024. And dismissed count seven (sexual assault on a child — pattern) requires a mandatory prison sentence of eight to twenty-four years to life. *See* §§ 18-3-405(2)(d), (3), 18-1.3-406, 18-1.3-401(1)(a)(V)(A), (V)(A.1), (V.5)(A), 18-1.3-1003(5)(a)(IV), 18-1.3-1004(1)(a), C.R.S. 2024.

¶ 21 Finally, the prosecution asserts that the district court's findings are inadequate to support its deterrent sanction because they don't reveal "significant negligence" or "ongoing" violations by the prosecutor. But evidence of "significant negligence" or "ongoing" violations isn't required for the court to impose a deterrent sanction. Although the supreme court determined that the violations in *Tippet* were part of a pattern of ongoing and significant discovery violations that verged on willful, *see Tippet*, ¶¶ 45, 55, such facts don't set the floor for what constitutes a pattern of neglectful discovery practices. Rather, a court acts within its discretion when imposing a deterrent or punitive sanction where, as here, the prosecution's conduct shows "a pattern of

13

neglect demonstrating a need for modification of a party's discovery practices." *Lee*, 18 P.3d at 196; *see also Whittington*, ¶ 19. Under such circumstances, the rules empower the court to ensure that the prosecution complies with its discovery obligations by "dismissing individual counts or even all charges against a defendant." *Tippet*, ¶ 71; *see Lee*, 18 P.3d at 196 ("[T]he exclusion of evidence or even complete dismissal can be proper remedies to assure compliance with discovery orders."); *see also Whittington*, ¶ 63 (Gabriel, J., dissenting) ("Absent such authority, parties could violate all manner of discovery rules without material consequence, as long as they can marshal a credible argument that their conduct was merely negligent and not willful.").

¶ 22 Accordingly, we conclude that the district court didn't abuse its discretion by dismissing counts six and seven against Whiteside as a deterrent discovery sanction.

### III. Disposition

¶ 23 We affirm the order.

JUDGE FREYRE and JUDGE SCHOCK concur.

14