23CA0252 Peo v Wagoner 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0252
Mesa County District Court No. 22CR329
Honorable Richard T. Gurley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip Dean Wagoner,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Phillip Dean Wagoner, appeals the judgment of conviction entered upon jury verdicts finding him guilty of unlawful possession of a controlled substance (methamphetamine) and possession of drug paraphernalia.  Specifically, Wagoner contends that the trial court abused its discretion by declining to impose harsher sanctions on the prosecution for its discovery violations. We disagree and, therefore, affirm the judgment.

## I.     Background

¶ 2     Early one morning, a Mesa County patrol deputy pulled over a car for failing to signal for a turn and having a brake light out. There were three people inside the car, including Wagoner, who was sitting in the rear passenger seat.

¶ 3     During the traffic stop, another officer shined his flashlight into the car and noticed a small plastic bag in the back seat.  At that point, the deputy asked everyone to step out of the car.  Upon looking into the car, the deputy saw three bags filled with a white powdery substance: a small bag on the back seat where Wagoner had been sitting, a medium bag on the floor where Wagoner's feet had been, and a large bag under the front passenger seat.  A search of the car also revealed a glass pipe under the passenger seat.

1

Because the officers were unsure whom the items belonged to, they arrested all three people from the car.

¶ 4     Later testing confirmed that all three bags contained methamphetamine: the small bag contained less than one gram, the medium bag contained about fourteen grams, and the large bag contained about sixty-five grams.

¶ 5     Wagoner was charged with possession of a controlled substance with intent to distribute and possession of drug paraphernalia. The prosecution theorized that all three bags of methamphetamine and the pipe belonged to Wagoner. Wagoner's theory of defense was that, given the evidence of other methamphetamine bags, drug paraphernalia, and a bundle of empty bags found on the front passenger's person and in her purse, the methamphetamine and pipe at issue were likely hers.

¶ 6     Less than a week before trial, defense counsel learned that the front passenger of the car had pleaded guilty several weeks earlier to possession of a controlled substance with intent to distribute — potentially including, according to the defense, some of the same bags of methamphetamine at issue in this case. The prosecution hadn't disclosed that plea. It also hadn't disclosed other evidence

relating to the passenger, including discovery regarding her prior convictions and other pending charges.

¶ 7    The next day, defense counsel moved for dismissal of the case against Wagoner as a discovery sanction. The trial court determined that the prosecution had indeed committed discovery violations but declined to dismiss the case against Wagoner because that was "too extreme" of a sanction. However, just before the start of trial, the court indicated that "there are other options available to the [c]ourt" and inquired whether the defense wanted to make "any other request." Defense counsel asked for only two specific sanctions: a modification to Wagoner's bond, which the court granted, and a jury instruction, which the court took under advisement. The court later declined to give Wagoner's tendered jury instruction.

¶ 8    At the close of trial, the court granted Wagoner's motion for judgment of acquittal on the possession with intent to distribute count but let the lesser included offense of unlawful possession go to the jury. The jury convicted Wagoner of both remaining offenses, finding that all three methamphetamine bags and the pipe belonged to him.

## II.    Sanctions for Discovery Violations

¶ 9    On appeal, Wagoner contends that the trial court abused its discretion by not imposing harsher sanctions on the prosecution for its discovery violations.  Specifically, Wagoner asserts that the court should have dismissed the case against him or, alternatively, provided the jury with his tendered instruction.  We set forth the relevant legal standards and then address each contention in turn.

### A.    Legal Standards

¶ 10    Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and Crim. P. 16(I)(a)(2), the prosecution is obligated to disclose any information within its possession or control that tends to negate the defendant's guilt of a charged offense.  As the trial court recognized, this obligation encompasses impeachment evidence.  *See People v. Lincoln*, 161 P.3d 1274, 1280 (Colo. 2007).  The prosecution must disclose such information "as soon as practicable but not later than 35 days before trial."  Crim. P. 16(I)(b)(3).

¶ 11    If the prosecution fails to comply with these discovery obligations, the trial court may order such sanctions as it "deems just under the circumstances."  Crim. P. 16(III)(g).  Because the core purpose of the discovery process is to "advance the search for

truth," *People v. Dist. Ct.*, 793 P.2d 163, 168 (Colo. 1990), the court must shape remedies with an eye toward "protecting the integrity of the truth-finding process and deterring discovery-related misconduct," *People v. Whittington*, 2024 CO 65, ¶ 19 (quoting *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001)).

¶ 12    Sanctions generally should be curative, meaning the court's goal in imposing a sanction should be to cure any prejudice from the discovery violation and "to 'restore a "level playing field,"'" without affecting the evidence or the merits of the case." *People v. Mendez*, 2017 COA 129, ¶ 33 (quoting *Lee*, 18 P.3d at 196). But, where "willful misconduct or a pattern of neglect demonstrat[es] a need for modification of a party's discovery practices," sanctions may also be deterrent or punitive. *Lee*, 18 P.3d at 196; *see also Whittington*, ¶ 19; *People v. Tippet*, 2023 CO 61, ¶ 53.

¶ 13    Either way, a court should impose "the least severe sanction that will ensure that there is full compliance with the court's discovery orders." *People v. Cobb*, 962 P.2d 944, 949 (Colo. 1998) (quoting *Dist. Ct.*, 793 P.2d at 168).

¶ 14    We review a trial court's resolution of discovery issues and imposition of sanctions for an abuse of discretion. *Tippet*, ¶ 34.

Therefore, we won't disturb a court's choice of discovery sanction unless the sanction is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous view of the law. *See id.* at ¶ 35.

## B. Case Dismissal

¶ 15    Wagoner contends that the trial court abused its discretion by declining to dismiss the case against him because the prosecution's discovery violations constituted willful misconduct and a pattern of neglect. We disagree.

¶ 16    Dismissal may be a proper remedy to deter future discovery-related misconduct if a party has engaged in willful misconduct or a pattern of neglect regarding its discovery obligations. *See Lee*, 18 P.3d at 196-97. However, in the absence of such misconduct, "dismissal as a sanction for a discovery violation is usually beyond the discretion of the trial court." *People v. Daley*, 97 P.3d 295, 298 (Colo. App. 2004).

¶ 17    In its ruling, the trial court reasoned,

> Defendant maintains that the District Attorney's failure to provide impeachment information in the form of the [passenger's] plea agreement and attendant documents was willful while the District Attorney maintains the failure to provide them was an inadvertent oversight. The requests for information from

the District Attorney were explicit and the District Attorney admitted to there being a discovery violation by not providing the plea agreement and the amended complaint in the [passenger's] case.

. . . .

The court finds violations to the extent that th[e] [requested] information has not been previously timely provided. When weighing the panoply of sanctions available to the court, the court believes that the outright dismissal of the charges in this case to be too extreme. Consequently, the only explicit request made of the court of dismissal of the case with prejudice is denied.

¶ 18 While the court found that the prosecution had indeed committed discovery violations, it didn't make a finding as to whether those violations were the result of any willful misconduct or pattern of neglect. Wagoner presents facts about the defense's repeated requests for information about the passenger's criminal cases, the prosecutor's personal knowledge of the status of the passenger's related case due to his active role in that case, and the prosecutor's failure to provide some of the requested information until the first day of trial — all of which might support such findings. Meanwhile, the People present other facts indicating that the discovery violation was inadvertent, militating against such

7

findings. Regardless, it is not our role to make such findings; instead, our role is only to "consider[] 'whether the trial court's decision fell within a range of reasonable options.'" *Tippet*, ¶ 64 (quoting *Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 74).

¶ 19 Absent a finding of willful misconduct or a pattern of neglect, we cannot conclude that the court abused its discretion by refusing to dismiss the case against Wagoner. *See Whittington*, ¶¶ 23-24 (a court abused its discretion by imposing a serious discovery sanction without having found any willful misconduct or pattern of discovery violations); *see also Tippet*, ¶ 68 ("[A] complete dismissal of the case would have been the most severe sanction, and . . . would not have served the truth-seeking purpose of the criminal justice system."). Nor can we say that declining to dismiss the case as a sanction fell outside the range of reasonable options before the trial court, particularly where other sanctions — such as a continuance — likely could have cured any prejudice. *See Lee*, 18 P.3d at 198 (a court abused its discretion by ordering a severe discovery sanction where "there was no indication that a . . . continuance would have been inadequate to compensate for any violation or would have unfairly prejudiced the defendant").

## C.   Jury Instruction

¶ 20   Alternatively, Wagoner contends that the trial court abused its discretion by declining to give his tendered jury instruction about the prosecution's discovery violations.  Again, we disagree.

¶ 21   During the trial, defense counsel submitted the following proposed instruction:

> In every criminal case in Colorado, the prosecution is required to disclose evidence and information to the defense within certain time frames.  Further, the prosecution is always required to turn over material that is exculpatory, or favorable, to someone accused of any crime in Colorado that is within their possession and control.

> In this case, the prosecution has made grave mistakes by repeatedly failing to timely disclose information to the defense.  Further, the prosecution has not turned over exculpatory evidence within their possession and control to Mr. Wagoner in a timely manner.  The government's failure to timely comply with its constitutional obligations can lead you to find reasonable doubt as to the guilt of Mr. Wagoner.

¶ 22   Defense counsel asserted that this instruction was an appropriate remedy for the discovery violations because she didn't have sufficient time to explore whether to call the passenger as a witness at trial.  The prosecution didn't call the passenger as a

9

witness. In questioning conducted outside the presence of the jury, the passenger acknowledged the methamphetamine, drug paraphernalia, and empty bags found on her person and in her purse but said the three bags of methamphetamine at issue in this case were not hers. Thereafter, the defense opted not to call her as a witness.

¶ 23 After some consideration, the court declined to give the defense's instruction, even in modified form, explaining that the instruction "doesn't really point the jury to any particular evidence," and thus "kind of just hangs there," and that "all [the] evidence related to impeachment materials for witnesses who did not testify."

¶ 24 We cannot conclude that the court abused its discretion by declining to give Wagoner's tendered instruction. It was within the court's discretion to decline to give an instruction that would've lacked any context. In particular, given that the passenger didn't testify at trial, it was reasonable for the court to conclude that the proposed instruction was out of place and unwarranted. In that regard, it was reasonable to conclude that the instruction wouldn't have cured any prejudice from the discovery violation and wouldn't have "'restore[d] a "level playing field,"'" without affecting the

evidence or the merits of the case." *Mendez*, ¶ 33 (quoting *Lee*, 18 P.3d at 196).

¶ 25    Finally, to the extent that Wagoner complains that the trial court failed to remedy the harm caused by the prosecution's late disclosure, we note that the court could only rule on the specific sanctions requests in front of it. Some other sanction — such as a continuance — may have remedied the harm, but Wagoner didn't ask for any other sanctions. Indeed, Wagoner expressly asked that the trial *not* be continued, arguing that "a continuance of this case would only further prejudice Mr. Wagoner" and that "[w]hile a continuance does provide Mr. Wagoner a remedy for his counsel to be fully prepared, it rewards [the prosecutor] for his misconduct by giving him more time to prepare for the trial as well." Thus, Wagoner concluded, "[t]his egregious conduct cannot be rewarded by providing the prosecution more time to investigate and prepare their case for trial." Having not requested the one remedy most likely to cure any harm caused by the discovery violation, Wagoner cannot now fault the trial court for not imposing a curative remedy.

### III.    Disposition

¶ 26    The judgment is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.