25CA0970 Peo v Ruppel 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0970
Fremont County District Court No. 24CR482
Honorable Lauren T. Swan, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Derek Eugene Ruppel,

Defendant-Appellee.

ORDERS VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Grove and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Jeffrey D. Lindsey, District Attorney, Stephanie B. Miller, Senior Deputy
District Attorney, Canon City, Colorado, for Plaintiff-Appellant

Jolly Law, P.L.L.C., Tyler A. Jolly, Salida, Colorado, for Defendant-Appellee

¶ 1     Jeffrey D. Lindsey, in his official capacity as the District Attorney for the Eleventh Judicial District, appeals the district court's orders (1) finding that his office committed a Crim. P. 16 discovery violation; (2) reducing the top drug felony charge against defendant, Derek Eugene Ruppel, as a sanction for that violation; and (3) refusing to reconsider its ruling and sanction.  We vacate the orders and remand for reinstatement of the top drug felony charge.

## I.     Background

¶ 2     Fremont County Sheriff's Office Detectives Rasmussen and Kreuger stopped a vehicle in which Ruppel was a passenger because the passenger side headlight was out.[1]  During the traffic stop, a detective saw drug paraphernalia in the driver's purse and an open marijuana container in the back seat.  Custer County Sheriff's Office K9 Deputy Lane arrived with his dog.[2]  The dog performed a "sniff" outside of the vehicle.  The dog indicated the presence of illegal drugs, and a subsequent search of the vehicle

---

[1] The facts giving rise to the charges are taken from the "Statement of Probable Cause" prepared by the arresting detectives.
[2] The documents refer to "Deputy Lane."  It appears that the deputy's name may be Lane Abercrombie.

turned up thirty-four grams of cocaine and two grams of methamphetamine.  The district attorney's office (district attorney) charged Ruppel with possession with intent to distribute a controlled substance (a class 2 drug felony) under section 18-18-405(1), (2)(b)(I)(A), C.R.S. 2025, and unlawful possession of a controlled substance (a class 1 drug misdemeanor) under section 18-18-403.5(1), (2)(c), C.R.S. 2025.

¶ 3    After charging Ruppel, the district attorney had twenty-one days from his first court appearance on January 8, 2025, to give the defense certain evidence collected by the prosecution, including police reports.  *See* Crim. P. 16(I)(a)(1)(I), (b)(1).  After the January 29 deadline passed, Ruppel's counsel filed a "Motion for Sanctions Based on Violation of Rule 16 as Part [sic] The District Attorney's Pattern and Practice of Violating Rule 16."  In the motion, counsel said that he hadn't received police reports from three law enforcement officers: Fremont County Sheriff's Office (FCSO) Deputies Pontius, Hebberd, and Keller.  Counsel also said that he hadn't received Custer County Deputy Lane's report or body-worn-camera footage.

¶ 4 Deputy District Attorney Wendy Owens (DDA Owens) responded to the motion, explaining that Deputy Lane's body-worn-camera footage had been mistakenly sent to Ruppel's previous public defender's email address. She said that once she learned via the motion for sanctions that current defense counsel didn't have the recording, her office sent it to current defense counsel.

¶ 5 As for the alleged missing Fremont County reports, DDA Owens said she had made "due and diligent request for all reports . . . from the FCSO and has been informed that everything has been sent." DDA Owens attached an email exchange between the FCSO and the district attorney's office to her response. Toward the beginning of that exchange, FCSO said that five body-worn-camera videos from Deputies Pontius, Hebberd, and Keller had been sent to the district attorney's office. A legal assistant with the district attorney's office responded: "Just following up [on] this evidence request[.] [A]ll I've received so far are the 5 videos, still waiting on actual reports in 24-00042963 and any other media." The FCSO's records technician replied, "ALL docs have been uploaded to Discovery as of 1/25/2025 and there are NO additional docs as of 1/27/2025." That email expressly referenced case number 24-

00042963 (which is the correct case number). The FCSO business and records manager subsequently confirmed, after some confusion between the offices about the case number, that "[e]verything in [Ruppel's] case has been sent over." In the end, DDA Owens told the FCSO, "As far as I can tell, that should be everything." DDA Owens later supplemented her response because the Custer County Sheriff's Office informed her that it had erroneously failed to send Deputy Lane's missing report to the district attorney.

¶ 6     At the hearing on the sanctions motion, defense counsel confirmed that he had received Deputy Lane's previously missing body-worn-camera footage and report. But he told the court that he believed he was still missing reports from Deputies Pontius, Hebberd, and Keller.

¶ 7     DDA Owens wasn't at the hearing; instead, Deputy District Attorney Tomme (DDA Tomme) — who had just started his assignment to the district court's docket that day — told the court that his office had tried to confirm whether everything had been discovered from the FCSO. The court asked him, "Have you seen reports from these officers?" DDA Tomme, after initially saying that he hadn't seen any such reports and hadn't had time to review the

4

case, said, "I believe from all the work that had been done . . . that we had all that and had been discovered." He said he would contact the FCSO later that day because he said his office wasn't trying to "hide anything" or "keep anything away from the Defense."

¶ 8 The district court granted the motion for sanctions after finding that the district attorney had committed a discovery violation. The court found a "lack of due diligence to ensure that all discovery has been disclosed" and that reports by Deputies Pontius, Hebberd, and Keller still hadn't been disclosed. The court also found that Ruppel was prejudiced by the missing discovery, but that the prejudice was less severe than "if this discovery had not been provided prior to some sort of contested hearing or trial, essentially." Observing that "there still is a pattern and practice of discovery violations in [the Eleventh Judicial District]," the court determined that the appropriate sanction for the violation was to reduce the top charge from a class 2 drug felony to a class 3 drug felony.

¶ 9 After the hearing, the district attorney filed a "Motion for Rehearing on Defendant's Discovery Allegations." The motion said the previously submitted email correspondence between the district

attorney's office and the FCSO was sufficient to show that the three reports defense counsel had requested didn't exist. It again noted the email from the sheriff's office, which said, "ALL docs have been uploaded to Discovery as of 1/25/2025 and there are NO additional docs as of 1/27/2025." DDA Tomme attached a report from FCSO Sergent Mike Joliffe. Sergent Joliffe said that he had searched his office's system and confirmed that no reports existed in Ruppel's case that hadn't already been produced. The prosecution expressly represented to the court that "Deputies Pontius, Hebberd, and Keller did not write reports."

¶ 10 The district court denied the district attorney's motion, concluding that the district attorney (1) had not exercised due diligence because counsel had two months to confirm that those reports didn't exist; (2) should have asked for a continuance at the hearing if the office wasn't sufficiently prepared; and (3) hadn't yet cited legal authority requiring the court to reconsider its earlier ruling.

¶ 11 In response, the district attorney filed a "Second Requested Motion for Rehearing on Defendant's Discovery Allegations." In it, DDA Tomme said his office had exercised due diligence because it

had received multiple confirmations that the three supposedly missing reports didn't exist and had subpoenaed Andrea Cooper, FCSO's records clerk, to testify at the hearing. But he said Cooper was out of town and wasn't available to testify at the hearing on the sanctions motion. DDA Tomme also said that, at the time of the hearing, he was new to the case and wasn't completely familiar with the discovery issue but believed the main point of contention was about the Custer County Sheriff's Office's delays in providing Deputy Lane's body-worn-camera footage. He also argued that the district court had authority to reconsider under Rule 16(IV)(a)(1), (b)(2), (c)(2), (c)(3).

¶ 12    The district court denied the district attorney's second motion to reconsider because the district attorney hadn't been clear enough about whether the three deputy reports existed. The court also noted that the district attorney's office had conceded that "it was late in its disclosure to the Defense" of Deputy Lane's body-worn-camera footage because it was mistakenly sent to the wrong email address.

¶ 13    The district attorney appealed the district court's rulings under section 16-12-102, C.R.S. 2025.

## II.    Discussion

¶ 14    The district attorney contends that there was no Rule 16 violation, and therefore the district court erred by ruling otherwise, imposing a sanction, and refusing to reconsider its ruling.  He also contends that the sanction was inappropriate even if there was a violation.  We agree with the district attorney that Ruppel presented no evidence of a discovery violation, and the district court never cited any, and therefore we vacate the sanction.

### A.    Applicable Law and Standard of Review

¶ 15    "Rule 16 governs a prosecutor's discovery obligations." *People v. Walthour*, 2023 CO 55, ¶ 17.  Rule 16 requires the prosecuting attorney to make available to the defense material and information, including police records and reports.  Crim. P. 16(I)(a)(1)(I).  The prosecuting attorney must do so "as soon as practicable but not later than 21 days after the defendant's first appearance at the time of or following the filing of charges."  Crim. P. 16(I)(b)(1).  The defense has no burden to request disclosure of these items.  *See People v. Tippet*, 2023 CO 61, ¶ 33 (citing *People v. Dist. Ct.*, 790 P.2d 332, 337 (Colo. 1990)).

¶ 16     When the prosecuting attorney — or any party — doesn't comply with Rule 16, "the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances." Crim. P. 16(III)(g). But it is the defendant's obligation to prove a violation. Indeed, Rule 16(III)(g) is triggered only when "it is brought to the attention of the court that a party *has* failed to comply with this rule." (Emphasis added.) *See United States v. Dermen*, 143 F.4th 1148, 1196 (10th Cir. 2025) (the defendant has the burden of proving a violation of the prosecution's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)); *State v. Larson*, 775 P.2d 415, 418 (Utah 1989) (holding, under a rule worded almost identically to Rule 16(III)(g), that the moving party has the burden of showing that the other party failed to provide discovery required under the rule); *cf. Dist. Ct.*, 790 P.2d at 338 (noting that, under Rule 16(I)(d)(1), the court has discretion to order disclosure of material not covered by Rule 16(I)(a) "upon a showing *by the defense* that the request is reasonable" (emphasis added) (quoting Crim. P. 16(I)(d)(1))).

¶ 17    We review de novo the proper interpretation of Rule 16. *Walthour*, ¶ 16.  We review a district court's ruling on sanctions for a Rule 16 violation for an abuse of discretion.  *Tippet*, ¶ 34.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.  *Id.* at ¶ 35.[3]  "In imposing discovery sanctions, the trial court must exercise its discretion 'with due regard for the purposes of the discovery rules themselves and the manner in which those purposes can be furthered by discovery sanctions.'"  *Id.* (quoting *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001)).

## B.    Analysis

¶ 18    The district court abused its discretion by concluding that "discovery is still outstanding" because Ruppel failed to produce any actual evidence that additional reports existed.  Indeed, the only evidence on the point was that there were no other reports.

---

[3] In connection with its argument that the district court abused its discretion, the district attorney's opening brief cites an unpublished decision by a division of this court, which violates our formal policy prohibiting parties from citing such cases (with exceptions that don't apply in this case).  *See* Colo. Jud. Branch, *Court of Appeals Policies*, *Policy Concerning Citation of Opinions Not Selected for Official Publication* (2025), https://perma.cc/Z88K-5U7F.  We trust that this violation of our policy won't be repeated.

- The sanctions motion didn't provide any evidence that the additional reports existed; defense counsel merely assumed they did.

- In responding to the sanctions motion, DDA Owens said that she had received "*all reports* . . . from the FCSO and has been informed that *everything* has been sent." (Emphasis added.)

- DDA Owens attached an email exchange to the response in which the sheriff's office said, "ALL docs have been uploaded to Discovery as of 1/25/2025 and there are NO additional docs as of 1/27/2025," and "Everything in [Ruppel's] case has been sent over." This statement was made in the context of whether the detectives at issue had prepared reports.

- DDA Owens confirmed, "As far as I can tell, that should be everything."

- DDA Tomme told the court at the hearing, "I believe from all the work that had been done . . . that [the district attorney] had all that and had been discovered."

- DDA Tomme attached to the first motion to reconsider Sergeant Joliffe's confirmation that "no additional reports were authored in this case."

¶ 19 Based on these facts in the record, there was no factual basis for the district court's apparent assumption that additional reports existed. The record's lone reference to these reports' existence is defense counsel's mere speculation in his motion for sanctions that they might exist. Even now on appeal, Ruppel doesn't assert that there is any evidence that the three deputies in question authored any reports. Rather, he says only that the district attorney's evidence doesn't establish conclusively that such reports don't exist.[4]

¶ 20 But the existence of such reports is obviously a prerequisite to any disclosure obligation on the district attorney's part. And

---

[4] Given our conclusions that Ruppel failed to present evidence of a discovery violation at any point in the proceeding, and that the prosecution presented evidence showing there was not, we don't need to address the parties' arguments regarding entitlement to rehearing. We also don't address the prosecution's request that we reverse the district court's finding of a pattern of discovery violations. Regardless of whether there is a pattern, this case doesn't appear to be part of one.

Ruppel, who bore the burden of proof, presented no evidence — only mere speculation — that such reports exist.

¶ 21    It follows that the district court abused its discretion by finding a discovery violation and by imposing a sanction for that purported violation.[5]

## III.    Disposition

¶ 22    We vacate the orders and direct the district court to reinstate the drug felony 2 charge.

JUDGE GROVE and JUDGE SCHUTZ concur.

---

[5] Ruppel doesn't argue that the district court based its sanction on the district attorney's delays in providing Deputy Lane's body-worn-camera footage and report.  Rightly so, because the court didn't mention that delay during the hearing on the sanctions motion.  The district court referred to Deputy Lane in its order denying the district attorney's second request for a rehearing but never indicated that the Crim. P. 16 violation or sanctions related to that violation.  And, in any event, given that the prosecution initially (and timely) provided the footage to Ruppel's first appointed attorney, that the prosecution promptly corrected that mistake when alerted to it, and that Ruppel suffered no prejudice as a result, any sanction for that delay would have been an abuse of discretion.