23CA0099 Peo v Applehans 01-15-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0099
City and County of Denver District Court No. 20CR5477
Honorable Edward D. Bronfin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert M. Applehans,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Albani Law, LLC, Peter B. Albani, Denver, Colorado; Path Forward Legal, Jennifer Gersch, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Robert M. Applehans, appeals his judgment of conviction for four counts of sexual assault on a child, one count of aggravated incest, a crime of violence sentence enhancer, and an aggravated sex offense sentence enhancer.  We affirm.

## I.    Background

¶ 2    Applehans's crimes involved two minor victims.  The first victim was A.C., Applehans's stepdaughter.  Over the course of several years, beginning when A.C. was seven years old, Applehans would enter A.C.'s bedroom at night while she appeared to be sleeping.  He would then touch her breasts and vagina, and he would digitally penetrate her vagina.

¶ 3    The second victim was K.B., one of A.C.'s cousins.  K.B. visited A.C. for a week one summer and shared A.C.'s bedroom.  This was during the period in which Applehans was assaulting A.C.  One night during K.B.'s visit, Applehans entered the bedroom and sexually assaulted K.B. in the same manner as he had done to A.C.

¶ 4    Eventually, A.C. confronted Applehans and then made an outcry, reporting the assaults to her mother, father, and stepmother.

¶ 5 Applehans was charged and tried on five counts for his assaults on A.C.: sexual assault on a child (pattern of abuse), sexual assault on a child (position of trust), aggravated incest, crime of violence (caused bodily injury), and aggravated sex offense (child under twelve and defendant ten years older). *See* § 18-3-405(1), (2)(d), C.R.S. 2025; § 18-3-405.3(1), (2)(a), C.R.S. 2025; § 18-6-302(1)(a), C.R.S. 2025; § 18-1.3-406(2)(b), C.R.S. 2025; § 18-1.3-1004(1)(e)(I), C.R.S. 2025.

¶ 6 Applehans was charged and tried on two counts for his assault on K.B.: sexual assault on a child (position of trust) and sexual assault on a child. *See* § 18-3-405.3(1), (2)(a); § 18-3-405(1).

¶ 7 The jury found Applehans guilty on all counts. The trial court imposed an indeterminate sentence of twenty-four years to life in the custody of the Department of Corrections for each count. The court imposed the sentences for the acts committed against each victim consecutively to those for the other victim.

## II. Analysis

¶ 8 On appeal, Applehans contends that the trial court erred by (1) failing to give a curative instruction or declare a mistrial in response to potential jurors making prejudicial statements during

voir dire; (2) attributing the dismissal of an expert witness to the defense; (3) denying two defense motions for a mistrial brought in response to the prosecution's discovery violations; and (4) allowing the prosecution to amend the information and complaint during trial. Applehans also asserts the doctrine of cumulative error. We address each contention in turn.

## A. Jurors' Statements During Voir Dire

¶ 9 Applehans contends that the trial court deprived him of his right to a fair trial by not providing a new jury panel after four prospective jurors made prejudicial statements in the presence of the other jurors. He asserts that defense counsel's request that the court strike the jurors was "tantamount to a request for a mistrial." We are not persuaded.

### 1. Standard of Review

¶ 10 We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v. Van Meter*, 2018 COA 13, ¶ 9. A trial court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or contrary to law." *Id.* "Because the trial court is in a better position" than an appellate court "to evaluate any adverse effect of improper statements or testimony on a jury, it

3

has considerable discretion to determine whether a mistrial is warranted." *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009), *aff'd sub nom.*, *People v. Simon*, 266 P.3d 1099 (Colo. 2011).

¶ 11     We review errors that were not preserved by objection for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. To qualify as plain error, an error must be obvious and substantial. *Id.* We reverse only when the error so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction. *Id.* An error is obvious only if, at the time of trial, the action challenged on appeal contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *See People v. Crabtree*, 2024 CO 40M, ¶¶ 42, 53.

## 2.     Additional Facts

¶ 12     At the start of voir dire, before the trial court had the jury panel complete written questionnaires, the court instructed the prospective jurors on the core legal principles that apply to criminal trials — the defendant's presumption of innocence, reasonable doubt, the prosecution's burden of proof, and the defendant's right to testify or not testify. The court then asked if any of the potential jurors would be unable to follow those legal principles if selected as

4

jurors in the case. Multiple jurors came forward and spoke in open court. Although often not directly addressing the legal principles, the jurors stated why they believed that they could not remain unbiased. Applehans challenges what the following four jurors said in front of the panel:

- The first juror said she had been a victim of sexual assault.

- The second juror said she had also been a victim of sexual assault.

- The third juror said that "[his] cousin is going through pretty much this exact same trial like right now."

- The fourth juror said that she was a therapist who works "with victims of sexual assault and incest and childhood sexual abuse," and "I feel like people almost — you know, it's incredibly rare for people to make something like that up. I also think it's really hard to prove."

Except for the first juror, the court excused these jurors after they made their statements.[1]

---

[1] Though it does not affect our analysis, it does not appear that the first potential juror served on the final jury.

¶ 13 Following the therapist juror's excusal, defense counsel requested a bench conference and then moved to strike the entire panel because of the therapist's statements. Defense counsel did not refer to the three other jurors' statements in requesting a new jury panel. The trial court denied the motion but offered to provide a curative instruction, to which the defense did not object. The court then instructed the jury panel:

> [C]omments made by jurors here are not evidence. They're that juror's individual viewpoint. They should not be considered by you in terms of any of the evidence or issues in the case. You must decide the case not based on what somebody says or their personal viewpoints, but, instead, solely on the facts and evidence presented at trial.

### 3. The Trial Court Remedied Any Prejudice with the Curative Instruction

¶ 14 "When a prospective juror makes a potentially prejudicial statement during voir dire, the trial court may issue a curative instruction; canvass the jury; or declare a mistrial." *Van Meter*, ¶ 10 (quoting *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 20). "Generally, a curative instruction issued after a prejudicial statement is made remedies any harm caused by the statement." *Id.* "Because a mistrial is the most drastic of remedies,

6

one is 'only warranted where the prejudice to the accused is too substantial to be remedied by other means.'" *Id.* at ¶ 11 (quoting *People v. Collins*, 730 P.2d 293, 303 (Colo. 1986)).

¶ 15     Regarding the therapist juror's prejudicial statements, we accept for the purposes of argument Applehans's assertion that his request to strike the panel amounted to a motion for a mistrial. *See id.* at ¶¶ 7, 13 (treating the defendant's request for new panel of prospective jurors based on one juror's potentially prejudicial statement as a motion for mistrial). But even accepting that as the case, we conclude that the court did not abuse its discretion by denying the motion because the court remedied any prejudice through its curative instruction. *See id.* at ¶ 10.

¶ 16     We are unconvinced by Applehans's claims that the prejudice was too substantial to be remedied by the curative instruction.[2]

---

[2] Applehans also asserts on appeal that the trial "court should have canvas[s]ed the jury first and foremost." But this assertion is at odds with the thrust of his primary contention, which is that the court erred by not granting the motion for a mistrial. Canvassing the jury to determine whether jurors have been impacted by a statement is an *alternative* to, not support for, granting a mistrial. *People v. Van Meter*, 2018 COA 13, ¶ 10. Either way, our conclusion that the curative instruction was sufficient to cure any potential prejudice applies to this alternative argument with equal force.

The record shows that the therapist juror's comment was brief and the curative instruction was thorough. "We presume that jurors follow the instructions that they receive." *People v. McKeel*, 246 P.3d 638, 641 (Colo. 2010). Further, following the curative instruction, the court's written questionnaire and remaining jury selection process provided sufficient opportunities for the jurors to alert the court to any unwillingness to follow the curative instruction. *Cf. People v. Clemens*, 2017 CO 89, ¶ 19 ("[A] prospective juror's silence in response to rehabilitative questioning constitutes evidence that the juror has been rehabilitated when the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."). The record indicates that those who served on the jury indicated they would be fair and impartial. *See Van Meter*, ¶ 14. Applehans does not explain — and we do not see — how the prospective therapist juror's statements caused prejudice that was too great for the curative instruction to remedy. *See id.* at ¶ 11; *People v. Wise*, 2014 COA 83, ¶ 28 ("[T]he mere loss of a peremptory challenge, standing alone, is insufficient to require reversal." (citing *People v. Novotny*, 2014 CO 18, ¶ 27)).

¶ 17    Regarding the statements from the other three jurors, Applehans contends, as best as we can discern, that the curative instruction was insufficient because the court caused the alleged prejudice by questioning the jurors before administering written questionnaires.  Defense counsel didn't object to the statements from any of these jurors and didn't request a curative instruction. Accordingly, we review this contention for plain error.

¶ 18    "[A] trial court does not commit plain error if it does not give a curative instruction sua sponte."  *Van Meter*, ¶ 10 (quoting *People v. Mersman*, 148 P.3d 199, 203 (Colo. App. 2006)).  And Applehans doesn't cite a clear statutory command, well-settled legal principle, or Colorado case that prohibits a court from questioning prospective jurors before it administers written questionnaires.  *See People v. Reese*, 670 P.2d 11, 13 (Colo. App. 1983) ("[Trial] courts have broad discretion in fashioning the methods of exercising peremptory challenges and the jury selection procedure in general." (citation omitted)).  Accordingly, any error resulting from the three jurors' statements wasn't plain.

## B. Motion to Disqualify Suvi Miller

¶ 19    Applehans contends that the trial court prejudiced him and disparaged his defense team by informing the jury that the court had granted the defense's motion to disqualify Suvi Miller, the prosecution's expert witness. We disagree.

### 1. Standard of Review

¶ 20    We review a trial court's denial of a motion for a mistrial and discovery sanctions for an abuse of discretion. *People v. Tippet,* 2023 CO 61, ¶ 34; *Van Meter,* ¶ 9. A trial court has wide discretion in conducting a trial and "is in the best position to judge the effect of any improper influence on the jury." *Medina v. People*, 114 P.3d 845, 860 (Colo. 2005) (citing *People v. Raehal*, 971 P.2d 256, 260 (Colo. App. 1998)).

### 2. Additional Facts

¶ 21    The prosecution called Miller to testify as an expert in the area of child sexual abuse. After Miller testified to her credentials and the prosecution moved to qualify her as an expert, the defense requested a bench conference. Defense counsel informed the court that she had just learned that Miller had received a formal disciplinary letter from the Colorado State Board of Social Work

Examiners, which the prosecution had never disclosed to the defense.[3]  The defense then objected to the court allowing Miller to testify.

¶ 22    The trial court found that the letter qualified as a disciplinary action that the prosecution should have disclosed to the defense. Accordingly, the court disqualified Miller from testifying.  The court then proposed instructing the jury that "for reasons . . . the jury doesn't need to consider . . . and they should not speculate about, the defense has moved to disqualify [Miller] and [the court has] granted the motion."  Defense counsel did not object to the instruction, responding only, "Thank you, Your Honor."

¶ 23    The trial court instructed the jury as follows:

> For reasons that I am going to instruct you not
> to consider, not to guess about, not to
> speculate about, it doesn't matter in terms of
> any of the issues that you need to decide upon
> and determine in the case, but there has been
> a motion by the defense for the [c]ourt to
> disallow [Miller] from testifying for reasons,
> again, that have absolutely no bearing on the
> issues in this case, and I'm going to instruct

---

[3] The letter admonished Miller for failing to comply with "mandatory disclosure requirements . . . by providing an inadequate mandatory disclosure form to a client lacking the credentials, and license number, also listing 'practice of psychology' rather than social work."

> you not to consider it at all in any of your evaluations or deliberations of the evidence.
>
> I have granted that motion. So we are going to, with our thanks and respect, excuse [Miller] at this point.

The court then released the jury for lunch.

¶ 24 During the lunch recess, defense counsel informed the court that, when the court provided its instruction, the defense had observed three members of the jury becoming "visibly distressed," "upset," and "pissed off" while looking at Applehans and defense counsel. The defense team interpreted the looks to mean that the jurors believed that the defense moved to disqualify Miller to obfuscate and hide evidence, prejudicing "the defense and [A]pplehans." The defense proposed that the court provide a further curative instruction advising the jury that the court struck Miller because "the prosecution failed to disclose information required under the United States Constitution" or the discovery rules.

¶ 25 The court clarified that it could not verify the defense's observations, as from the court's perspective "everybody seemed to be in a great mood" when the jurors left the courtroom. The

12

prosecution agreed with the court's assessment.  Still, the court said it would consider a further curative instruction.

¶ 26    Afterwards, the prosecution moved the court to reconsider Miller's disqualification, which the court declined to do.  Then the defense moved for a mistrial based in part on "the [c]ourt's comment to the jury that [Miller's disqualification was] because of the defense'[s] motion," which the court also denied.

¶ 27    The court later added to the final jury instructions an instruction that addressed Miller's disqualification:

> The decision of the [c]ourt in sustaining or overruling an objection must not be considered in your evaluation of the case, what has or has not been proven, or whether or not the prosecution has or has not met its burden in proving, beyond a reasonable doubt, any of the charges.  The decision of the [c]ourt not to permit a witness to testify during the trial must not be considered by you for any reason; you may not guess or speculate about the reason(s) for the ruling, use that ruling in favor of or against either side, or consider it for any purpose.

### 3. The Trial Court Did Not Abuse Its Discretion by Granting the Relief Requested

¶ 28 As part of its ruling disqualifying Miller from testifying, the court proposed the instruction that explained why Miller was being disqualified, and Applehans assented to the proposal. Therefore, at least as to the initial curative instruction itself, Applehans cannot now complain that the instruction was insufficient to prevent or cure any prejudice. *See People v. Alemayehu*, 2021 COA 69, ¶ 101; *People v. Jamison*, 2018 COA 121, ¶ 37.

¶ 29 As to the disparaging looks from some of the jurors the defense team said it observed, the court later provided the jury with additional curative instructions regarding attorney objections to remedy any purported prejudice arising from these disparaging looks. Those curative instructions were also given, at least in part, at the defense's request.

¶ 30 In addition to the contemporaneous curative instruction, the court also provided the detailed final jury instruction telling the jurors that they could not use the reasons for the court's ruling in their deliberations. And as previously indicated, we must presume

the jurors followed the court's instructions.  *See McKeel*, 246 P.3d at 641.

¶ 31    Besides, Applehans's assumption that the disparaging looks from jurors meant that the jury was prejudiced against him is speculative.  Such speculation does not establish that the court abused its discretion by not providing the defense's requested additional curative instruction stating that the court struck Miller because of the prosecution's discovery violation.  *See Raehal*, 971 P.2d at 260 ("[T]his court must give deference to the findings of the trial court, based on its observation of courtroom occurrences, rather than engage in abstract speculation to find prejudice."); *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo. App. 2008) (requiring "more than mere speculation concerning the possibility of prejudice" to establish court bias), *aff'd*, 238 P.3d 1283 (Colo. 2010).  And the court's observation that "everybody seemed to be in a great mood" when the jurors left the courtroom cuts against defense counsel's perception of the events.

¶ 32    Given all of this, we cannot say on this record that the court abused its discretion by not providing the additional curative instruction.  It responded to Applehans's requests for a curative

instruction by repeatedly and appropriately instructing the jurors that, when evaluating the case, they should not consider the court's exclusion of Miller's or other witnesses' testimony or the court's decisions on objections.

## C. Discovery Violations

¶ 33     Applehans contends that the trial court abused its discretion by denying two motions for a mistrial based on the prosecution's discovery violations involving Miller's report and a report of A.C.'s discussion with a medical professional.  Again, we're not persuaded.

### 1. Standard of Review and Applicable Law

¶ 34     We review a trial court's imposition of sanctions for discovery violations for an abuse of discretion.  *People v. Whittington*, 2024 CO 65, ¶ 17.  In this regard, "great deference is owed to trial courts" because "of the multiplicity of considerations involved and the uniqueness of each case." *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001).  But the trial court's discretion is not unlimited, and we will reverse a trial court's sanctions that are manifestly arbitrary, unreasonable, or unfair.  *Tippet*, ¶ 35.

¶ 35     A trial court also has considerable discretion to determine if a mistrial is warranted, and we will not disturb the decision to deny a

16

mistrial "absent a clear showing of an abuse of discretion and prejudice to the defendant." *People v. Williams*, 2012 COA 165, ¶ 13 (quoting *Bloom v. People*, 185 P.3d 797, 807 (Colo. 2008)).

¶ 36    The purpose of requiring discovery under Crim. P. 16 "is to advance the search for truth." *People v. Dist. Ct.*, 793 P.2d 163, 168 (Colo. 1990).  Sanctions, then, serve the dual purposes of "protecting the integrity of the truth-finding process and deterring discovery-related misconduct." *Lee*, 18 P.3d at 196.  Accordingly, sanctions may be curative or they may be deterrent and punitive when willful misconduct warrants modification of discovery practices.  *Whittington*, ¶ 19.  Without "willful misconduct or a pattern of neglect demonstrating a need for modification of a party's discovery practices, the rationale for a deterrent sanction loses much of its force." *Lee*, 18 P.3d at 196.

¶ 37    The Colorado Supreme Court has laid out several factors for courts to consider when fashioning discovery sanctions: "(1) the reason for and degree of culpability associated with the violation; (2) the extent of resulting prejudice to the other party; (3) any events after the violation that mitigate such prejudice;

(4) reasonable and less drastic alternatives to exclusion; and (5) any other relevant facts." *Whittington*, ¶ 17 (quoting *Tippet*, ¶ 37).

### 2. Disciplinary Letter for Suvi Miller

¶ 38    Applehans asserts that the prosecution's failure to disclose Miller's disciplinary letter prejudiced Applehans because the letter was discovered in the middle of trial. Applehans argues that this prevented him from addressing the letter pretrial or consulting with a potential defense expert. Furthermore, Applehans claims that the prosecutor's opening statements pertaining to Miller's expected testimony misled the jury, and the court allowing Miller to testify to her credentials had a negative influence on Applehans's case.

### a. Additional Facts

¶ 39    In his opening statement, the prosecutor said that the prosecution intended to "put an expert on the stand who's going to talk about why a child [victim] might not disclose or why they beg their friend not to tell somebody else" about a sexual assault.

¶ 40    As discussed *supra* Part II.B.2, the defense later moved for a mistrial after the trial court disqualified Miller because of the prosecution's failure to disclose the disciplinary letter. The defense

claimed that a mistrial was warranted because Miller had prejudicially already provided some testimony.

¶ 41   The trial court noted that, even though Miller had not informed the prosecution that she had received a disciplinary letter, the prosecution still had not met its obligation to uncover and disclose the letter.  Yet, the court denied Applehans's motion for a mistrial because (1) the prosecution had not acted deliberately in failing to disclose the letter; (2) Miller was testifying as a generalized expert and not to specific facts in the case; (3) the court thought disqualifying Miller was the most reasonable and appropriate remedy for the situation; and (4) the court had contemporaneously instructed the jury not to consider the disqualification.

### b.   The Disqualification of Miller Was Not an Abuse of Discretion

¶ 42   Given these circumstances, the court didn't abuse its discretion by not granting Applehans's motion for a mistrial according to the factors applicable for the fashioning of a discovery sanction.  *See id.* at ¶ 17.

¶ 43   First, the court found that the prosecution did not act in bad faith because it was unaware of the disciplinary letter, and

therefore, the court crafted appropriate curative measures. *See Lee*, 18 P.3d at 197 (holding that when deterrence is inapplicable, "the goal must be to cure any prejudice resulting from the violation"). The record contains support for this finding.

¶ 44 Second, the resulting prejudice to Applehans was minimal because the surprise to the defense caused by finding the disciplinary letter late was mitigated by Miller's disqualification. The information that the jury heard about Miller — the prosecutor's opening statements and Miller's testimony regarding her credentials — necessarily had little direct bearing on the outcome of the case because Miller's role was that of a generalized expert. And the prosecutor's mention in his opening statement that Miller would be called to testify as to "why a child [victim] might not disclose" was cumulative of testimony from a detective who discussed the meaning of the term "delayed outcry." *See People v. Banuelos*, 674 P.2d 964, 967 (Colo. App. 1983) (holding that the trial court did not abuse its discretion by declining to impose sanctions when it determined that the untimely disclosed information was cumulative and immaterial to the outcome of the trial).

¶ 45    Third, both the court's instruction to the jury that the opening statements were not evidence and the curative instruction and final jury instruction that the jury should not consider for any reason the court's decision not to permit a witness to testify mitigated any prejudice. *See People v. Owens*, 2024 CO 10, ¶ 128 ("We presume that the jury understands and will follow a trial court's curative instructions, absent evidence to the contrary.").

¶ 46    Fourth, the court granted Applehans's request when it sanctioned the prosecution by disqualifying Miller from testifying. *See People v. Grant*, 2021 COA 53, ¶ 44. And Miller's exclusion was a drastic option that generally favored Applehans, as Miller's expert testimony was being offered against him. *See Whittington*, ¶ 20 ("[W]e have recently emphasized that a court should generally avoid excluding evidence as a sanction because exclusion is a drastic remedy that may affect the outcome of the trial, provide a windfall to the party against whom the evidence would have been offered, or otherwise hinder the search for the truth.").

### 3.    Medical Report for A.C.

¶ 47    Applehans also claims that the trial court abused its discretion by not granting a mistrial for the prosecution's failure to

21

disclose a medical report that described statements made by A.C. This is because, according to Applehans, the discovery violation prevented the defense from consulting or retaining an expert or interviewing those involved with the report. And the court's denial purportedly demonstrated a broader pattern of the court favoring the prosecution.

a. Additional Facts

¶ 48 After A.C.'s outcry, the police conducted a forensic interview, which was recorded and played at trial. In the interview, A.C. said that Applehans sexually assaulted her by touching her breasts and vagina, and by digitally penetrating her vagina. She further stated that the digital penetrations "hurt."

¶ 49 A.C. testified at trial that the digital penetrations by Applehans made her feel "uncomfortable." A detective then testified that, after the forensic interview, A.C. refused a physical examination and no SANE exam was performed.[4] However, in response to a jury question, the detective also stated that A.C. had spoken with a medical professional, who in turn had written a medical report that

---

[4] A sexual assault nurse examiner, or SANE, exam is a specific type of medical exam done to collect evidence from a sexual assault.

the detective had attached to his case file.  The report, written by a nurse practitioner, stated that A.C. "denie[d] experiencing any pain" from the digital penetration "and denie[d] having any worries or concerns about her body as a result."  The prosecution did not disclose the report because the police department's case management system failed to transfer the medical report from the detective's case file to the prosecution.

¶ 50    Applehans moved for a mistrial due to the prosecution's discovery violation.  Applehans argued that the report was material because the impeaching statement — that A.C. did not experience pain — contradicted her statement in the forensic interview that the digital penetrations "hurt" her.  According to Applehans, had the report been properly disclosed, the defense would have conducted different investigations and likely shifted its trial strategy from focusing on the theory that law enforcement failed to conduct adequate investigations to a theory centered on witness suggestibility.

¶ 51    Although the court considered granting a mistrial, it ultimately denied the motion because (1) most of the medical report contained information that was consistent with A.C.'s forensic interview;

(2) the impeaching statement, while contradictory to a statement in the forensic interview, was consistent with A.C.'s trial testimony that she felt "uncomfortable," without mentioning experiencing pain; and (3) the medical report didn't undercut the defense's trial strategy because the defense hadn't limited its strategy to a single theory.

¶ 52    Even so, as a sanction for the discovery violation, the court ordered that it would permit Applehans to refer to the impeaching statement in the medical report while precluding the prosecution from mentioning the report.  The defense then requested a continuance or, alternatively, for the court to instruct the jury that A.C. had once denied experiencing any pain from the assaults.  The court denied the continuance but granted the request for the jury instruction over the prosecution's objection.  The jury instruction stated that "[i]n a report made by [A.C.] after the forensic interview," A.C. had "denie[d] experiencing any pain" from Applehans "coming into her room at night to touch her private parts."

### b. The Discovery Sanction for the Prosecution's Failure to Produce the Medical Report Was Not an Abuse of Discretion

¶ 53    We reject Applehans's contention that the trial court abused its discretion by denying the motion for a mistrial based on the factors a court should consider when fashioning discovery sanctions. *See Whittington,* ¶ 17.

¶ 54    First, the court appropriately elected to fashion curative measures, as opposed to punitive measures, because the prosecution did not act in bad faith, as the prosecutors were unaware that the medical report had not been transferred from the police case management system. *See id.* at ¶ 19.

¶ 55    Second, the extent of the prejudice was limited because the only prejudicial part of the report was the impeaching statement that A.C. experienced no pain from the digital penetrations. And while that statement was inconsistent with her statement in the forensic interview, the impeaching statement was consistent with A.C.'s trial testimony that the digital penetrations made her feel "uncomfortable," as uncomfortable could be reasonably interpreted to mean not physically painful.

¶ 56    Further, the medical report did not fundamentally undermine Applehans's trial strategy by undercutting his core theory of defense. As the trial court noted, Applehans had already elicited evidence and testimony through cross-examination that supported *both* a theory of a lack of police investigation and a theory of witness suggestibility. Thus, he had not favored the theory of a lack of police investigation — which he alleges the medical report undermined — to the exclusion of the theory of witness suggestibility. And so the statement in the medical report didn't undercut his theory of defense. If anything, it served to strengthen one of the two theories he pursued.

¶ 57    Third, the trial court mitigated any prejudice by providing a curative instruction establishing that A.C. made the impeaching statement after the forensic interview. *Cf. Tillery*, 231 P.3d at 43 (holding that the jury was presumed to have followed a curative instruction to disregard improper testimony). That the court granted the instruction at Applehans's request further shows that the court did not have a pattern of favoring the prosecution.

¶ 58    Fourth, the trial court considered Applehans's request for a mistrial but found that such a drastic remedy was not warranted

26

given that the impeaching statement did not directly contradict A.C.'s trial testimony. *See id.* ("Because the trial court is in a better position to evaluate any adverse effect of improper statements or testimony on a jury, it has considerable discretion to determine whether a mistrial is warranted."); *see also People v. Salas*, 2017 COA 63, ¶ 9 ("A mistrial is 'the most drastic of remedies,' and is 'only warranted where the prejudice to the accused is too substantial to be remedied by other means.'" (quoting *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984)). The record supports the court's finding on this point.

### D. Motion to Amend

¶ 59 Applehans contends that the trial court erred by granting the prosecution's motion to amend the complaint and information, which was filed on the third day of trial. We are unpersuaded.

#### 1. Standard of Review and Applicable Law

¶ 60 We review a trial court's decision on a motion to amend for an abuse of discretion. *Fisher v. People*, 2020 CO 70, ¶ 13.

¶ 61 Crim. P. 7(e) states, in relevant part, that "the court may permit [an information] to be amended as to form at any time before the verdict or finding if no additional or different offense is charged

27

and if substantial rights of the defendant are not prejudiced." Accordingly, a court may grant such permission to the prosecution after the trial has begun "if the amendment (1) [is] one of form, (2) [does] not charge an additional or different offense, and (3) [does] not prejudice [the defendant's] substantial rights." *Fisher*, ¶ 15 (fourth alteration in original) (quoting *People v. Washam*, 2018 CO 19, ¶ 16)).

¶ 62 In considering such an amendment, Rule 7(e) "does not ask *how much* the defendant has been prejudiced. Rather, the rule asks *whether* a defendant's substantial rights have been prejudiced *at all*." *Id.* at ¶ 17 (third emphasis added). Whether a defendant's substantial rights are prejudiced involves an examination of the totality of the circumstances in each case. *Id.* at ¶ 18. Relevant factors for this examination include, but are not limited to, (1) the theory of the defense; (2) the timing of the amendment; and (3) whether the amendment requires a different defense strategy. *Id.*

## 2. Additional Facts

¶ 63 The prosecution's initial complaint and information charged Applehans with four counts of assaulting A.C. between 2016 and

28

2020. The information charged Applehans with assaulting K.B. in 2018 in the remaining two counts.

¶ 64 The trial testimony indicated that the assault on K.B. occurred during one summer when K.B. visited A.C. for a week. Yet, some witnesses were uncertain of the precise year of the visit, testifying that it occurred in 2019 or merely in a year before 2020.

¶ 65 On the third day of trial, the prosecutor moved to amend the counts to state that Applehans assaulted K.B. between June 1, 2018, and August 31, 2019, to conform with the testimony. Applehans objected on the general grounds that the amendment disrupted his theory of the case, ability to investigate, and defense strategy. But the court ruled that Applehans's objections did not show any prejudice because the changed timeframe was not a material element of the charges involving K.B.

¶ 66 However, the court permitted defense counsel to take forty-five minutes to review Applehans's cell phone and determine whether defense counsel could then make an offer of proof that there was evidence supporting an alibi defense for the amended timeframe.

¶ 67 After defense counsel made no offer of proof, the court granted the motion to amend. The court ruled that the amendment did not

prejudice Applehans because (1) Applehans's objections failed to show any specific or particular prejudice to his case, and (2) the time period in the amendment fell within the timeframe for the counts involving A.C.

### 3. The Trial Court Did Not Abuse Its Discretion by Granting the Motion to Amend

¶ 68 The trial court did not abuse its discretion because the amendment was one of form, did not charge an additional or different offense, and did not prejudice Applehans's substantial rights under the totality of the circumstances. *See id.*; *see also People v. Walker*, 321 P.3d 528, 544 (Colo. App. 2011) ("[A] change in the date of an offense is a matter of form, especially where, as here, the limitations period has not yet run."), *aff'd in part and vacated in part on other grounds*, 2014 CO 6.

¶ 69 On the last point, there was no prejudice to Applehans's substantial rights for two reasons. First, Applehans's theory of defense was not affected because the prosecution did not introduce an entirely new timeframe for the crimes. Unlike in *Fisher*, where an amendment prejudicially extended the timeframe of the charges beyond the time period for which the defendant had prepared an

alibi defense, *Fisher*, ¶ 20, here, the amendment only extended the timeframe for the charges involving K.B. to overlap with the existing timeframe for the other counts involving A.C. And in any case, Applehans did not present an alibi for the timeframe involving A.C. *See Washam*, ¶ 30.[5]

¶ 70    Second, the amendment did not require a different defense strategy because the year in which K.B.'s visit took place was not a material element of the offenses. Specifically, the trial court found that it appeared undisputed that the alleged assault on K.B. occurred when she visited A.C. in Colorado during a certain summer before 2020, and that both K.B. and A.C. were assaulted on the same night. Applehans thus had sufficient notice to prepare a defense because the offenses involving A.C. included that A.C. was present for the assault on K.B., and the assault on K.B.

---

[5] We are further unpersuaded by Applehans's claims that he was prejudiced by only having forty-five minutes to research an alibi defense related to K.B. The court, in no uncertain terms, gave Applehans forty-five minutes to consider whether he could make an offer of proof, not forty-five minutes to fully investigate his defense. The fact that Applehans responded by merely reiterating general and speculative claims of prejudice fails to demonstrate an abuse of discretion. *See People v. Washam*, 2018 CO 19, ¶ 30 (holding that amendment did not prejudice the defendant who provided no "specific argument of prejudice").

happened within the timeframe in which the assaults against A.C. occurred. *See People v. Metcalf*, 926 P.2d 133, 140 (Colo. App. 1996) (ruling that an amendment to the information's timeframe did not prejudice the defendant where "the date of the offense was not a material element of the offense, was not an issue at trial, and the amendment did not involve an altered accusation or require a different defense strategy").

## E.  Cumulative Error

¶ 71    Applehans asserts that the cumulative effect of the alleged errors require reversal.

¶ 72    "Though an error, when viewed in isolation, may be harmless or not affect the defendant's substantial rights, reversal will nevertheless be required when 'the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.'" *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)).  However, "[t]he doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Conyac*, 2014 COA 8M, ¶ 152.  Therefore,

we reject Applehans's contention because we discern no error in the trial court's rulings challenged on appeal.

## III.    Disposition

¶ 73    The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.